Kane, J.
Appeal from an order of the Supreme Court (Moynihan, Jr., J.), entered April 21, 2003 in Washington County, which granted plaintiffs motion for a preliminary injunction.
In June 1998, plaintiff, an equine veterinary clinic, hired defendant as an equine veterinarian. The parties signed a one-year employment contract drafted by plaintiff’s president containing a restrictive covenant, in which defendant agreed not to compete with plaintiff within 35 miles of plaintiffs clinic for three years following termination. Subsequent similar one-year agreements, each containing a restrictive covenant but *857 adding that defendant was not to use plaintiffs client information without permission, were signed in 1999 and 2000.[1] Each annual contract also contained a salary increase. In June 2001, plaintiff presented another contract, which defendant did not sign. Defendant continued to work for plaintiff and was paid the increased salary quoted in the unsigned 2001 contract. In June 2002, plaintiff’s president informed defendant that her contract was not being renewed, but extended her employment for a few months to discuss permitting defendant to buy out part of plaintiffs business or buy out of the restrictive covenant. No buy-out agreement was reached.
After defendant left plaintiffs employ, she established her own equine veterinary practice in which she drove to clients’ homes but was based out of her own home, located five miles from plaintiffs clinic. Defendant is admittedly servicing clients she serviced while employed by plaintiff. Plaintiff commenced this action seeking, among other things, to enjoin defendant from violating the restrictive covenant. Supreme Court granted plaintiffs request for a preliminary injunction preventing defendant from practicing equine veterinary medicine within 35 miles of plaintiffs clinic, from providing services to any of plaintiff’s former clients in any location, and from utilizing plaintiffs confidential client information for any purpose. Defendant appeals. We affirm the grant of a preliminary injunction, but modify its terms.
The party seeking a preliminary injunction must demonstrate a likelihood of success on the merits, irreparable injury if temporary relief is not granted, and that a balancing of the equities favors the movant (see Doe v Axelrod, 73 NY2d 748, 750 [1988]; Marietta Corp. v Fairhurst, 301 AD2d 734, 736 [2003]). Plaintiff has shown a likelihood of success on the merits. Covenants not to compete will be enforced if reasonably limited as to time, geographic area and scope, are necessary to protect the employer’s interests, not harmful to the public, and not unduly burdensome (see Gelder Med. Group v Webber, 41 NY2d 680, 683 *858 [1977]; Albany Med. Coll. v Lobel, 296 AD2d 701, 702 [2002]). Whether or not defendant is bound by the terms of the 2001 contract that she did not sign, she is unquestionably bound by the 2000 contract that contained the restrictive covenant. She signed that document and received consideration in exchange for abiding by its terms.[2] A three-year period is reasonable, as is the 35-mile restriction, which is narrower than plaintiffs service area (see Gelder Med. Group v Webber, supra [five years and 30 miles]; Karpinski v Ingrasci, 28 NY2d 45 [1971] [five counties forever]; Albany Med. Coll. v Lobel, supra [five years and 30 miles]). The scope is similarly reasonable as the covenant only prohibits the practice of equine veterinary medicine, not all veterinary medicine (see Karpinski v Ingrasci, supra at 49-52 [covenant modified to enjoin only oral surgery, not general dentistry]). The covenant is necessary to protect plaintiffs interests, as plaintiff will otherwise lose clients it gained after years of hard work. It is not unduly burdensome to defendant, as she can practice general veterinary medicine anywhere or her specialty outside the proscribed area.
“A covenant against competition must be construed strictly and should not be extended beyond the literal meaning of its terms” (DeCapua v Dine-A-Mate, 292 AD2d 489, 492 [2002] [citations omitted]). Ambiguous terms will be resolved against the contract drafter (see Matter of Saranac Cent. School Dish [Sweet Assoc.], 253 AD2d 566, 567 [1998], lv denied 92 NY2d 820 [1999]). The covenant here mentions the potential damage if a terminated employee is permitted to provide services to plaintiffs clients. Although it appears that plaintiff intended to prevent defendant from servicing all of its former clients regardless of their location, construing the provision’s language as expressly written, it does not prohibit defendant from providing services outside the 35-mile area, even to plaintiff’s former clients. Thus, the preliminary injunction issued by Supreme Court should be modified by removing the prohibition on servicing plaintiffs clients outside the 35-mile area.
For the issuance of a preliminary injunction, plaintiff failed to adequately demonstrate that defendant improperly appropriated its customer list or used confidential client information. Such lists are generally not considered confidential unless information contained therein is not known in the trade and discoverable only through extraordinary efforts (see H. Meer Dental Supply Co. v Commisso, 269 AD2d 662, 664 [2000]; *859 Empire Farm Credit v Bailey, 239 AD2d 855, 856 [1997]). Despite its allegations, plaintiff failed to prove that its customer list information was not ascertainable through public sources, such as horse shows, breeders’ associations, signs on houses and barns, or even the phone book. While a physical taking or studied copying of the employer’s client information may result in a court enjoining solicitation based not on a trade secret violation but as an egregious breach of trust and confidence (see Silfen, Inc. v Cream, 29 NY2d 387, 391-392 [1972]), on this motion plaintiff failed to prove its allegation that defendant took a handwritten customer list before her employment was terminated.
Irreparable injury may be shown through a loss of patients in a medical specialty, permanent loss of revenues from those patients or clients, and loss of referral business usually garnered from clients (see Albany Med. Coll. v Lobel, supra at 703; Bollengier v Gulati, 233 AD2d 721, 722 [1996]). Loss of goodwill associated with a business, which is difficult to quantify, can constitute irreparable injury even if monetary damages, as well as injunctive relief, are requested (see Frank May Assoc. v Boughton, 281 AD2d 673, 674 [2001]). Defendant’s operation within 35 miles of plaintiff’s clinic in the unique specialty of equine veterinary services is causing plaintiff irreparable injury.
The equities balance in plaintiffs favor. Plaintiff spent over 20 years building its business, while defendant had no contacts in the area except those developed through employment with plaintiff. Defendant is not being deprived of her livelihood, as she is free to practice equine veterinary medicine outside the 35-mile area, or any other type of veterinary medicine in any location (compare Karpinski v Ingrasci, supra at 49-52; Bollengier v Gulati, supra at 722-723).
Finally, we find without merit defendant’s arguments regarding the employment agreement being an adhesion contract, the applicability of a factually different trial court matter involving the same plaintiff, and plaintiffs alleged waiver of its right to enforce the restrictive covenant.
Cardona, P.J., Peters and Carpinello, JJ., concur. Ordered that the order is modified, on the facts, without costs, by deleting those portions of the preliminary injunction which prohibit defendant from servicing plaintiff’s clients outside the 35-mile area and prohibit defendant’s use of plaintiffs client information; and, as so modified, affirmed.

. The 2000 agreement’s covenant stated: “The parties agree that the Employer’s business is local in scope and that the Employer would suffer serious damage and loss of goodwill if upon termination of this agreement, the Employee competed with the Employer by providing veterinary services for the clients who are currently clients of the Employer. The Employee, therefore, agrees that for a period of three years after the end of their employment, they will not within 35 miles of the Employer’s current business address [be connected in any way with] any business similar to the type of equine veterinary practice conducted by the Employer . . . . It is also agreed that the client list and client information are confidential and the property of the employer and may not be used for any purpose without the permission of the employer.”

. We do not decide when the covenant began to run, as that will ultimately be determined by Supreme Court. Regardless of the beginning time, the three-year period has not yet expired.