[889 NYS2d 793]

DESTINY USA HOLDINGS, LLC, Respondent, v CITIGROUP GLOBAL MARKETS REALTY CORP., Appellant.

Fourth Department, November 13, 2009

## APPEARANCES OF COUNSEL

*Paul, Weiss, Rifkind, Wharton & Garrison LLP*, New York City (*Leslie G. Fagen* of counsel), and *Hancock & Estabrook, LLP*, Syracuse, for appellant.

*Dickstein Shapiro LLP*, New York City (*Howard Graff* of counsel), and *Gilberti Stinziano Heintz & Smith, P.C.*, Syracuse, for respondent.

## OPINION OF THE COURT

PINE, J.

The primary issue on this appeal is whether plaintiff, Destiny USA Holdings, LLC (Destiny Holdings), is entitled to a prelimi-

nary injunction requiring defendant, Citigroup Global Markets Realty Corp. (Citigroup), to fund "pending draw requests" on a loan structured as "an advancing term loan." Citigroup contends that such relief is not available because the action is one for breach of contract and Destiny Holdings could be compensated monetarily for any damages allegedly sustained. Supreme Court disagreed and, inter alia, granted the preliminary injunction sought (*Destiny USA Holdings, LLC v Citigroup Global Mkts. Realty Corp.*, 24 Misc 3d 1222[A], 2009 NY Slip Op 51550[U] [2009]). For the reasons that follow, we conclude that the court properly determined that Destiny Holdings is entitled to a preliminary injunction requiring Citigroup to fund "pending draw requests" but that the court erred in granting other relief that was neither requested nor appropriate and in failing to set an undertaking.

## Factual Background

In 2005 Citigroup agreed to provide financing for the first phase of Destiny Holdings' "Destiny USA" expansion project. The first phase of the "Destiny USA" project involved the "development and construction of a shopping center/tourist destination containing at least 800,000 gross square feet and related facilities and improvements." Other phases were to include the construction of a hotel as well as retail, entertainment and dining facilities. The "Destiny USA" project was to be funded using a unique financing model for green economic development. Phase one of the project, the only phase at issue on this appeal (hereafter, Project), was to be funded using money from three sources: Destiny Holdings, proceeds from bonds issued by the City of Syracuse Industrial Development Agency (SIDA) and approximately $155 million to be loaned by Citigroup.

In February 2007 the parties entered into an Amended and Restated Building Loan, Project Loan and Security Agreement (Agreement), which detailed the development and funding of the Project. Pursuant to the Agreement, Citigroup agreed to act as both a lender and as the agent for all of the lenders. As the agent, Citigroup was responsible for approving all advances of money, regardless of whether the advances came from funds of Destiny Holdings, SIDA or Citigroup. Although the Agreement states that the money from Destiny Holdings and SIDA would be held in various escrow accounts, there is no evidence in the record that Citigroup created separate escrow accounts or in

any way segregated the money that it would be loaning to the Project. Pursuant to the Agreement, loan advances were made after Destiny Holdings submitted its monthly draw request and various conditions precedent were met. Citigroup could deny a draw request if it determined that a "Deficiency" existed. A Deficiency occurred when the money required to complete construction of the "Required Improvements" exceeded the money yet to be advanced and other available funds.

In February 2007 Citigroup began disbursing the monthly advances. With respect to the 17th, 18th, and 19th draw requests, made in the summer of 2008, Citigroup alleged that there were Deficiencies and included allocations for Tenant Improvement Costs (TI Costs) in its calculations of those Deficiencies. Destiny Holdings disputed the calculations and, in November 2008, representatives of both parties met to discuss the inclusion of TI Costs in Deficiency calculations. Following that meeting, TI Costs were excluded from Deficiency calculations for the 20th through 26th draw requests.

The 27th draw request was submitted in April 2009, with a funding due date of May 5, 2009. On May 20, 2009, Citigroup sent Destiny Holdings a Deficiency notice, alleging that Destiny Holdings was deficient by over $15 million. Virtually all of the claimed Deficiency was based on the inclusion of TI Costs in calculating the Deficiency. When Destiny Holdings failed to cure the Deficiency within 10 business days, Citigroup declared the loan in default. Although Destiny Holdings submitted the 28th and 29th draw requests, Citigroup has not funded any draw request since declaring the loan in default. Destiny Holdings contends that the Project is approximately 90% complete.

## Procedural History

On June 9, 2009, Destiny Holdings commenced this action asserting six causes of action, including one for breach of contract, as well as causes of action seeking a declaratory judgment, specific performance, and both preliminary and permanent injunctions. On the same date, Destiny Holdings moved for a preliminary injunction seeking to compel Citigroup "to fund the pending loan advances . . . or, alternatively, enjoining Citigroup from refusing to fund such pending advances." Destiny Holdings also sought to compel Citigroup "to comply with the procedural requirements of the construction loan agreement when approving future loan advances—in particular, the contractually-mandated calculation of a 'Deficiency' under that agreement."

In deciding the motion for a preliminary injunction, Supreme Court: (1) determined that the Notice of Deficiency was null and void and vacated it; (2) determined that the Notice of Default was null and void and vacated it; (3) determined that the term "Deficiency" was not a budget-based term and that TI Costs could not be used in calculating whether a Deficiency existed; (4) determined that Citigroup had breached the Agreement; (5) ordered Citigroup to fund the 27th draw request; (6) ordered Citigroup to fund the 28th draw request; (7) ordered Citigroup to fund the 29th draw request; (8) ordered Citigroup to "pay all future sums due as draws or advances under the [Agreement] as they come due without further delay or interference" (2009 NY Slip Op 51550[U] at *20); (9) scheduled a hearing to determine whether there was a current Deficiency; and (10) reserved until after that hearing any decision on the nature, amount and type of performance bond.

Citigroup appeals, contending that the court erred in granting a preliminary injunction, in granting the ultimate relief sought in the complaint and in failing to require Destiny Holdings to provide a substantial undertaking.

### General Provisions of Law

In order to establish its entitlement to a preliminary injunction, the party seeking the injunction must establish, by clear and convincing evidence (see Network Fin. Planning v Prudential-Bache Sec., 194 AD2d 651 [1993]), three separate elements: "(1) a likelihood of ultimate success on the merits; (2) the prospect of irreparable injury if the provisional relief is withheld; and (3) a balance of equities tipping in the moving party's favor" (Doe v Axelrod, 73 NY2d 748, 750 [1988]; see J. A. Preston Corp. v Fabrication Enters., 68 NY2d 397, 406 [1986]; Miller v Powers, 30 AD3d 1060, 1061 [2006]). Entitlement to a preliminary injunction "depends upon probabilities, any or all of which may be disproven when the action is tried on the merits" (J. A. Preston Corp., 68 NY2d at 406). " 'A motion for a preliminary injunction is addressed to the sound discretion of the trial court[,] and the decision of the trial court on such a motion will not be disturbed on appeal, unless there is a showing of an abuse of discretion' " (Abramo v HealthNow N.Y., 305 AD2d 1009, 1009 [2003]; see Axelrod, 73 NY2d at 750).

We agree with Citigroup and the dissent that provisional injunctive relief has historically been "limited to equitable actions where the defendant threatened to violate the rights of

the plaintiff *'respecting the subject of the action,* which would tend to render the judgment ineffectual' " (*Credit Agricole Indosuez v Rossiyskiy Kredit Bank*, 94 NY2d 541, 545 [2000]). That is because, generally, "in a pure contract money action, there is no right of the plaintiff in some specific *subject* of the action; hence, no prejudgment right to interfere in the use of the defendant's property; and no entitlement to injunctive relief pendente lite" (*id.*). In such situations, the "plaintiff has an adequate remedy in the form of monetary damages, and injunctive relief is both unnecessary and unwarranted" (*D&W Diesel v McIntosh*, 307 AD2d 750, 751 [2003]).

The same reasoning applies with respect to a cause of action for specific performance. "In general, specific performance will not be ordered where money damages 'would be adequate to protect the expectation interest of the injured party' " (*Sokoloff v Harriman Estates Dev. Corp.*, 96 NY2d 409, 415 [2001]). Because money is fungible, a party seeking enforcement of an agreement to lend money would be expected to borrow money elsewhere and recover damages based on the higher costs associated with the replacement loan (*see generally Bradford, Eldred & Cuba R.R. Co. v New York, Lake Erie & W. R.R. Co.*, 123 NY 316, 325-327 [1890]).

Nevertheless, exceptions to the general rules exist. For example, preliminary injunctions have been awarded where the subject of the action involves a specific fund (*see e.g. Sau Thi Ma v Xuan T. Lien*, 198 AD2d 186 [1993], *lv dismissed* 83 NY2d 847 [1994]; *Bashein v Landau*, 96 AD2d 479 [1983]; *see also Credit Agricole Indosuez*, 94 NY2d at 548; *Dinner Club Corp. v Hamlet on Olde Oyster Bay Homeowners Assn., Inc.*, 21 AD3d 777, 778 [2005]), and specific performance has been awarded where "the subject matter of a particular contract is unique and has no established market value" (*Van Wagner Adv. Corp. v S & M Enters.*, 67 NY2d 186, 193 [1986]; *see also First Natl. State Bank of N.J. v Commonwealth Fed. Sav. & Loan Assn. of Norristown*, 610 F2d 164, 171-172 [1979]).

■ For the reasons that follow, we conclude that a departure from the general rules is warranted here.

## Likelihood of Ultimate Success on the Merits

The first prong of the test for a preliminary injunction is whether Destiny Holdings has established a likelihood of ultimate success on the merits (*see Axelrod*, 73 NY2d at 750). We conclude that it has done so. The crux of this appeal is

whether TI Costs may be included in the calculation of a Deficiency, as that term is defined by the Agreement. The determination of that issue rests solely on matters of contractual interpretation. It is well settled that "[t]he interpretation of an unambiguous contractual provision is 'a function for the court'" (*Pyramid Brokerage Co. of Buffalo, Inc. v Atlas Auto Glass, Inc.*, 39 AD3d 1176, 1177 [2007], quoting *Teitelbaum Holdings v Gold*, 48 NY2d 51, 56 [1979]). In the event that a contract is ambiguous, its interpretation is still a matter for the court unless "determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence" (*Hartford Acc. & Indem. Co. v Wesolowski*, 33 NY2d 169, 172 [1973]). We conclude that the interpretation of the provisions of the Agreement in this case is a matter for the court.

Pursuant to the Agreement,

> " 'Deficiency' means, at any given time, the amount by which the balance of (i) the Building Loan yet to be advanced by Lenders . . . plus (ii) the balance of the Project Loan yet to be advanced by Lenders . . ., plus (iii) funds available for disbursement from the Construction Account, the Equity Account and/or the Recap Account for unfunded Budget Costs in accordance with the Agreed Funding Schedule, is less than the actual sum, as estimated by [Citigroup] in its reasonable judgment . . . , which will be required to complete the construction of the Required Improvements in accordance with the Plans and Specifications, the Construction Schedule, all Legal Requirements and this Agreement, and to pay all unpaid Costs in connection therewith. Such estimate shall be binding and conclusive provided it is made in good faith and absent manifest error[;] . . .
>
> 'Plans and Specifications' means (i) the preliminary plans and specifications for the construction of the Required Improvements as identified on Schedule 6 attached hereto, (ii) the updated and revised plans and specifications to be delivered pursuant to Sections 3.5 and 5.2 (f) and any other plans and specifications prepared or to be prepared by (or on behalf of) [Destiny Holdings] . . . , and (iii) all Change Orders applicable thereto . . . ; the Plans and Specifications shall include, without limitation, a de-

scription of the materials, equipment and fixtures necessary for the construction of the Required Improvements . . . together with any other architectural, structural, foundation and elevator plans and specifications prepared by Architect, any mechanical, electrical, plumbing and fire protection plans and specifications prepared by any Person retained or to be retained by [Destiny Holdings], Architect or Construction Manager[;] . . .

'Required Improvements' means the demolition of any existing improvements located on the Land and the construction on the Land of a structure comprising a shopping center/tourist destination containing approximately 848,000 square feet of [Leaseable Area] together with related facilities, parking facilities, amenities and improvements substantially in accordance with the Plans and Specifications[; and] . . .

'TI Costs' means tenant improvement costs and allowances incurred by [Destiny Holdings] in connection with renewing existing Leases or executing new Leases for space located in the Mortgaged Property."

"Leaseable Area" is defined in the Agreement by reference to City of Syracuse Ordinance No. 32 of 2002, pursuant to which it means

"the area of floor space on all floors, subject to lease or other occupancy agreement or available for lease, for an initial term of at least one year, measured from the midpoint of any interior walls or the outside face of exterior walls, and expressly excluding all common areas, except those portions of common areas occupied by kiosks, pushcarts or other permanently affixed structures or facilities pursuant to lease for an initial term of at least one year."

It is undisputed that TI Costs are not specifically included as a Required Improvement in the Plans and Specifications, although they were included in the budget for the Project. Citigroup contends that TI Costs were implicitly included as a Required Improvement to the extent that a Required Improvement is anything related to the construction of a shopping center and tourist destination. In short, Citigroup contends that excluding TI Costs from the definition of Required Improve-

ments leaves only "a core and shell," which is "not a shopping center and tourist destination." Although Citigroup concedes that, at the time of the motion for a preliminary injunction, TI Costs were not included in the Plans and Specifications, Citigroup nevertheless contends that the Plans and Specifications are updated and changed on a routine basis and that the Plans and Specifications will eventually include TI Costs. On the record before us, however, TI Costs are not included as a Required Improvement in any of the Plans and Specifications. We thus conclude that Destiny Holdings has established a likelihood of ultimate success on the merits by submitting clear and convincing evidence that TI Costs should not have been included in Citigroup's calculation of a Deficiency.

## Irreparable Injury

The second prong of the test for a preliminary injunction is whether there will be irreparable injury if the provisional relief is withheld (*see Axelrod,* 73 NY2d at 750). As noted above, irreparable injury generally cannot be established where any damages sustained are calculable, because the plaintiff in such a case would have an adequate remedy in the form of monetary damages (see *D&W Diesel,* 307 AD2d at 751; *see also Sokoloff,* 96 NY2d at 415; *Credit Agricole Indosuez,* 94 NY2d at 545). Here, an exception to the general rule is warranted for several reasons.

First, "cases of construction mortgages are an exception" to the general rule (*Southampton Wholesale Food Term. v Providence Produce Warehouse Co.,* 129 F Supp 663, 664 [1955]). "Since the law regards land as unique[,] an agreement to buy land can be specifically enforced even though the defendant's sole obligation is to pay money . . . Although the question is close, it may not be too great a stretch to include advances under a construction mortgage" (*id.*).* In such circumstances, the "agreement . . . is not a simple contract to lend money. It is

---

* As noted in *Bregman v Meehan* (125 Misc 2d 332, 346-347 [1984]), "there has been a noticeable erosion of the rule that a borrower cannot obtain specific performance on an agreement to lend money. Rather, specific performance has been granted, particularly when the loan relates to the sale of real property" (*see e.g. Leben v Nassau Sav. & Loan Assn.,* 40 AD2d 830 [1972], *affd* 34 NY2d 671 [1974]; *Woodruff v Germansky,* 233 NY 365 [1922]; *Caplin v Penn Mut. Life Ins. Co.,* 182 App Div 269 [1918], *affd* 229 NY 545 [1920] [right to borrow against a life insurance policy]; *National Sur. Corp. v Titan Const. Corp.,* 26 NYS2d 227 [1940], *affd* 260 App Div 911 [1940]; *Spoolan Realty Corp. v Haebler,* 147 Misc 9 [1931]; *Southampton Wholesale Food Term.,* 129 F Supp 663 [1955]; *Cuna Mut. Ins. Soc. v Dominguez,* 9 Ariz App 172, 450 P2d

an integral part of a contract to sell [or develop] real property" (*Bregman v Meehan*, 125 Misc 2d 332, 347 [1984]; *see also 805 Third Ave Co. v N.Y. Life Ins. Co.*, NYLJ, Sept. 22, 1982, at 12, col 1; *First Natl. State Bank of N.J.*, 610 F2d at 171-173; *Selective Bldrs., Inc. v Hudson City Sav. Bank*, 137 NJ Super 500, 508, 349 A2d 564, 569 [1975]).

Second, an exception is warranted because the Project's unique character renders it difficult to calculate any damages sustained by Destiny Holdings. Citigroup stated through its managing director at a U.S. Green Building Council presentation on November 8, 2007 that the Project is a "visionary project" that has created a "new financing paradigm for green economic development" that is "revolutionary." Citigroup chairman and chief executive officer Charles Prince called the use of newly-created Federal Green Bonds in financing the Project " 'groundbreaking and . . . a step forward in addressing climate change in the U.S. because [the Project] incorporates sustainable design, energy conservation and renewable energy sources on a large scale' " (GreenBiz, *U.S. Green Building Council to Purchase First Green Bonds*, http://www.greenerbuildings.com/news/2007/02/27/us-green-building-council-purchase-first-green-bonds [Feb. 27, 2007]). He further commented that the Project " 'is good for economic development and good for the environment' " (*id.*). Thus, the unprecedented nature and scope of the Project makes it unique, so that it has no established market value and any damages sustained could not be calculated with reasonable precision (*see Van Wagner Adv. Corp.*, 67 NY2d at 193; *AIU Ins. Co. v Robert Plan Corp.*, 44 AD3d 355, 356 [2007]; *Pfizer Inc. v PCS Health Sys.*, 234 AD2d 18, 19 [1996]; *Penstraw, Inc. v Metropolitan Transp. Auth.*, 200 AD2d 442 [1994]).

> " 'What matters, in measuring money damages, is the volume, refinement, and reliability of the available information about substitutes for the subject matter of the breached contract. When the relevant

413 [1969]; *Forman v Benson*, 112 Ill App 3d 1070, 446 NE2d 535 [1983]; *St. Paul at Chase Corp. v Manufacturers Life Ins. Co.*, 262 Md 192, 278 A2d 12 [1971], *cert denied* 404 US 857 [1971]; *City of Camden v South Jersey Port Commn.*, 4 NJ 357, 73 A2d 55 [1950]; *Selective Bldrs., Inc. v Hudson City Sav. Bank*, 137 NJ Super 500, 349 A2d 564 [1975]; *Jacobson v First Nat. Bank of Bloomingdale*, 129 NJ Eq 440, 20 A2d 19 [1941], *affd* 130 NJ Eq 604, 23 A2d 409 [1942]; *Columbus Club v Simons*, 110 Okla 48, 236 P 12 [1925]; *Vandeventer v Dale Constr. Co.*, 271 Or 691, 534 P2d 183 [1975]; *Steward v Bounds*, 167 Wash 554, 9 P2d 1112 [1932]; *Gideon v Putnam Dev. Co.*, 113 W Va 200, 167 SE 140 [1932]).

information is thin and unreliable, there is a substantial risk that an award of money damages will either exceed or fall short of the promisee's actual loss. Of course this risk can always be reduced—but only at great cost when reliable information is difficult to obtain. Conversely, when there is a great deal of consumer behavior generating abundant and highly dependable information about substitutes, the risk of error in measuring the promisee's loss may be reduced at much smaller cost. In asserting that the subject matter of a particular contract is unique and has no established market value, a court is really saying that it cannot obtain, at reasonable cost, enough information about substitutes to permit it to calculate an award of money damages without imposing an unacceptably high risk of undercompensation on the injured promisee. Conceived in this way, the uniqueness test seems economically sound[ ]' . . . This principle is reflected in the case law (see[ ] e.g.[ ] *Erie R. R. Co. v City of Buffalo*, 180 NY 192, 200; *St. Regis Paper Co. v Santa Clara Lbr. Co.*, 173 NY 149, 160; *Dailey v City of New York*, 170 App Div 267, 276-277, *affd* 218 NY 665), and is essentially the position of the Restatement (Second) of Contracts, which lists 'the difficulty of proving damages with reasonable certainty' as the first factor affecting adequacy of damages" (*Van Wagner Adv. Corp.*, 67 NY2d at 193).

Finally, an exception is warranted because Destiny Holdings has established the enormous potential for harm to its reputation and the reputation of the entire "Destiny USA" project. Harm to business reputation is harm for which money damages are insufficient and for which injunctive relief may be appropriate (*see e.g. Battenkill Veterinary Equine v Cangelosi*, 1 AD3d 856, 859 [2003]; *Klein, Wagner & Morris v Lawrence A. Klein, P.C.*, 186 AD2d 631, 633 [1992]).

Citigroup contends that Destiny Holdings could have sought a replacement loan and avoided the irreparable harm that it now alleges could result. While we agree with Citigroup and the dissent that the record lacks any evidence that Destiny Holdings ever attempted to secure a replacement loan, we take judicial notice of the economic conditions that prevailed when Citigroup ceased making the loan advances (*see generally City of Rochester v Union Free School Dist. No. 4 of Town of Livonia*, 255 App

Div 96, 100 [1938], *affd* 280 NY 531 [1939]; *Blek v Wilson*, 262 NY 253, 255 [1933], *remittitur amended* 262 NY 694 [1933]), and we conclude that, for purposes of a motion for a preliminary injunction, Destiny Holdings has established a probability that funds to replace the loan proceeds were not available elsewhere.

## Balance of the Equities

The third and final prong of the test for evaluating the propriety of a preliminary injunction is a balancing of the equities (*see Axelrod*, 73 NY2d at 750). " '[I]t must be shown that the irreparable injury to be sustained . . . is more burdensome [to the plaintiff] than the harm caused to defendant through imposition of the injunction' " (*McLaughlin, Piven, Vogel v Nolan & Co.*, 114 AD2d 165, 174 [1986], *lv denied* 67 NY2d 606 [1986]; *see Credit Index v RiskWise Intl.*, 282 AD2d 246 [2001]; *Klein, Wagner & Morris*, 186 AD2d at 633). " 'In ruling on a motion for a preliminary injunction, the courts must weigh the interests of the general public as well as the interests of the parties to the litigation' " (*De Pina v Educational Testing Serv.*, 31 AD2d 744, 745 [1969]; *see Seitzman v Hudson Riv. Assoc.*, 126 AD2d 211, 214-215 [1987]). After reviewing "the 'enormous public interests involved' " (*Seitzman*, 126 AD2d at 214), we conclude that Destiny Holdings has established that a balancing of the equities favors granting the preliminary injunction.

## Unrequested and Inappropriate Relief

We agree with Citigroup, however, that the relief granted by the court goes beyond what was actually requested and what is appropriate. In its motion for a preliminary injunction, Destiny Holdings sought to compel Citigroup "to fund the pending loan advances . . . or, alternatively, [to] enjoin[ ] Citigroup from refusing to fund such pending advances." Destiny Holdings also sought "equitable relief directing Citigroup to comply with the procedural requirements of the [Agreement] when approving future loan advances—in particular, the contractually-mandated calculation of a 'Deficiency' under that [A]greement." In the eighth ordering paragraph of its order, however, the court ordered Citigroup to "pay all future sums due as draws or advances . . . as they come due" (2009 NY Slip Op 51550[U] at *20). The court exceeded the bounds of the requested relief, and

we therefore conclude that the order should be modified by vacating the eighth ordering paragraph. In addition, we note that " '[a] preliminary injunction is a provisional remedy. Its function is not to determine the ultimate rights of the parties, but to maintain the status quo until there can be a full hearing on the merits' " (*Pamela Equities Corp. v 270 Park Ave. Café Corp.*, 62 AD3d 620, 621 [2009]; *see Tucker v Toia*, 54 AD2d 322, 325-326 [1976]). In this case, by determining that the Notice of Deficiency and Notice of Default are null and void and in thus vacating them, by determining that the term Deficiency as used in the Agreement should not include TI Costs and by determining that Citigroup had breached the Agreement, the court erred in determining the ultimate rights of the parties. We therefore conclude that the order should be further modified by vacating the first through fourth ordering paragraphs.

## Undertaking

■ We further agree with Citigroup that the court erred in granting a preliminary injunction without also ordering Destiny Holdings to post an undertaking (*see* CPLR 6312 [b]; *Pamela Equities Corp.*, 62 AD3d 620 [2009]; *Ying Fung Moy v Hohi Umeki*, 10 AD3d 604, 605 [2004]; *Rust v Turgeon*, 295 AD2d 962, 963 [2002]). In the interest of judicial economy, we fix the amount of the undertaking at $15 million, which we conclude is a reasonable amount to "reimburse [Citigroup] for damages sustained if it is later finally determined that the preliminary injunction was erroneously granted" (*Margolies v Encounter, Inc.*, 42 NY2d 475, 477 [1977]). We therefore conclude that the order should be further modified by vacating the tenth ordering paragraph and by providing in the fifth through seventh ordering paragraphs that the preliminary injunction is granted upon condition that Destiny Holdings post an undertaking in the amount of $15 million within 20 days after service of the order of this Court with notice of entry (*see Crippen v United Petroleum Feedstocks*, 245 AD2d 152 [1997]).

## Conclusion

Accordingly, for the foregoing reasons, we conclude that the court did not abuse its discretion in granting Destiny Holdings a preliminary injunction but that the order should be modified by vacating the first, second, third, fourth, eighth and tenth ordering paragraphs and by providing in the fifth, sixth and

seventh ordering paragraphs that the preliminary injunction is granted upon condition that Destiny Holdings post an undertaking in the amount of $15 million within 20 days after service of the order of this Court with notice of entry.

FAHEY, J. (dissenting). We respectfully dissent. There is no authority under New York law that entitles a party to a preliminary injunction requiring a lending institution to loan money. Accordingly, we conclude that Supreme Court abused its discretion in granting a preliminary injunction to plaintiff, Destiny USA Holdings, LLC (Destiny Holdings), and we would reverse the order, deny the motion seeking that relief and vacate the injunction.

I

The procedural vehicle at issue in this action is a motion for a preliminary injunction pursuant to CPLR 6301. Destiny Holdings commenced this action asserting causes of action for, inter alia, breach of contract. Specifically, Destiny Holdings alleged that defendant, Citigroup Global Markets Realty Corp. (Citigroup), breached the parties' Amended and Restated Building Loan, Project Loan and Security Agreement (Agreement). According to Destiny Holdings, Citigroup has not funded $68.4 million of a $155 million construction loan that constitutes the private financing component of an approximately $330 million project to construct a mall near the City of Syracuse (Project). At the time it commenced the action, Destiny Holdings also moved by order to show cause for a preliminary injunction pursuant to CPLR 6301 seeking to compel Citigroup to fund pending loan advances under the Agreement and to comply with the procedural requirements of the Agreement when approving future loan advances.

II

Our dissent is rooted in the sound principle that a preliminary injunction is not available in an action for money damages only (see generally Credit Agricole Indosuez v Rossiyskiy Kredit Bank, 94 NY2d 541, 544-546 [2000]), inasmuch as "monies may not be considered the 'subject' of the action within the meaning of CPLR 6301" (Halmar Distribs. v Approved Mfg. Corp., 49 AD2d 841, 842 [1975]). Injunctive relief is unnecessary and unwarranted where a plaintiff has an adequate remedy in the form of monetary damages (see D&W Diesel v McIntosh, 307 AD2d 750 [2003]). In the context of construction loans, it is

unheard of for courts to grant preliminary injunctive relief requiring a party to lend money. Likewise, "New York courts will not order specific performance of a contract to lend money to a plaintiff, on the ground that money is fungible, and an injured party can borrow funds elsewhere and recover damages based on the higher costs it was forced to pay to the replacement lender" (*BT Triple Crown Merger Co., Inc. v Citigroup Global Mkts. Inc.*, 19 Misc 3d 1129[A], 2008 NY Slip Op 50941[U], *8; *see generally Bradford, Eldred & Cuba R.R. Co. v New York, Lake Erie & W. R.R. Co.*, 123 NY 316, 325-327 [1890]).

The logic underlying the Court of Appeals' decision in *Credit Agricole Indosuez* is instructive and guides our analysis of this case.

In *Credit Agricole Indosuez*, the plaintiffs, which were foreign banking institutions, commenced an action seeking to recover unsecured debts of the defendants totaling $30 million (94 NY2d at 543-544). The Court of Appeals denied the plaintiffs' motion for a preliminary injunction seeking, inter alia, to prevent a defendant banking institution from transferring or conveying assets necessary to satisfy any judgment awarded to the plaintiffs (*id.* at 544). The conclusion of the Court of Appeals was simple and clear: "an unsecured creditor suing to collect a debt [is] not entitled to preliminary injunctive relief to prevent the debtor's dissipation of assets prior to judgment" (*id.* at 546).

In reaching that conclusion, the Court of Appeals relied on the principles that "provisional injunctive relief [is typically] limited to equitable actions where the defendant threatened to violate the rights of the plaintiff *'respecting the subject of the action,* which would tend to render the judgment ineffectual' " (*id.* at 545), and that a plaintiff in an action seeking a money judgment " *'has no rights as against the property of the defendant* until he [or she] obtains a judgment, and *until then he [or she] has no legal right to interfere with the defendant in the use and sale of the same'* " (*id.* at 545-546). The Court of Appeals referred to the analysis of the United States Supreme Court to support the proposition that

"no provisional injunctive remedy [is] available [in a money action on a debt] because of 'the substantive rule that a general creditor (one without a judgment) ha[s] no cognizable interest, either at law or

in equity, in the property of his [or her] debtor, and therefore [cannot] interfere with the debtor's use of that property' " (*id.* at 546, quoting *Grupo Mexicano de Desarrollo, S.A. v Alliance Bond Fund, Inc.*, 527 US 308, 319-320 [1999]).

The decision in *Credit Agricole Indosuez* sets forth two exceptions to the general rule that would warrant a preliminary injunction in an action for money damages only. First, an exception would be warranted when "the equitable relief in the case was granted under procedures independent of CPLR 6301" and, second, an exception would be warranted when "the suit involve[s] claims of the plaintiff to a specific fund, rightly regarded by the court as 'the subject of the action' . . . , making a preliminary injunction appropriate under the express wording of that provision" (*id.* at 548).

The first of those exceptions is obviously inapplicable to this case, given the manner in which the relief here was granted. The second exception applies to an action seeking to recover a specific fund. While this action is clearly for a specific *sum* of money, it does not seek recovery from a specific *fund*. Indeed, there is no evidence in the record establishing the existence of any specific fund. Consequently, the second exception is also inapplicable (*see Dinner Club Corp. v Hamlet on Olde Oyster Bay Homeowners Assn., Inc.*, 21 AD3d 777, 778 [2005]; *Leo v Levi*, 304 AD2d 621, 623 [2003]).

## III

There is little, if any, fundamental distinction between the facts of this case and those of *Credit Agricole Indosuez*. Similar to the obligation owed to the plaintiff foreign banking institutions in *Credit Agricole Indosuez*, this case involves a monetary obligation owed to Destiny Holdings by Citigroup. Just as an unsecured creditor attempting to collect a debt is not entitled to preliminary injunctive relief to prevent the dissipation of a debtor's assets prior to judgment, so too is a lendee not entitled to preliminary injunctive relief encumbering the assets of a lender in circumstances such as these. Put more simply, "monies may not be considered the 'subject' of the action within the meaning of CPLR 6301" (*Halmar Distribs.*, 49 AD2d at 842), and preliminary injunctive relief is an improper method of enforcing the Agreement (*see generally Credit Agricole Indosuez*, 94 NY2d at 550-551).

## IV

As the majority notes, a party seeking a preliminary injunction must demonstrate "(1) a likelihood of ultimate success on the merits; (2) the prospect of irreparable injury if the provisional relief is withheld; and (3) a balance of equities tipping in the moving party's favor" (*Doe v Axelrod*, 73 NY2d 748, 750 [1988]; *see J. A. Preston Corp. v Fabrication Enters.*, 68 NY2d 397, 406 [1986]; *Miller v Powers*, 30 AD3d 1060 [2006]). The "irreparable injury" element of that test generally cannot be established where the damages are calculable because, as the majority notes, the plaintiff would have an adequate remedy in the form of a determinable amount of money damages (*see D&W Diesel*, 307 AD2d at 751; *see also Sokoloff v Harriman Estates Dev. Corp.*, 96 NY2d 409, 415 [2001]; *Credit Agricole Indosuez*, 94 NY2d at 545).

The majority cites authority for the proposition that " 'cases of construction mortgages are an exception' " to the rule requiring the party seeking a preliminary injunction to demonstrate irreparable harm, but the majority cites no controlling authority to support that proposition. The majority also concludes that the nature of the Project and the alleged inability of Destiny Holdings to obtain a replacement loan warrants an exception to that rule. The record, however, contains no evidence that Destiny Holdings ever applied for a replacement loan. Likewise, there is no support in the record for the majority's conclusion that an "enormous potential" for harm to the reputation of Destiny Holdings exists, other than the bald assertion of a principal of Destiny Holdings that its reputation would be damaged as a result of its failure to complete the Project.

The core of the majority's argument is that the nature of the Project makes it unique and thus that Destiny Holdings would be entitled to specific performance. While the scope of the Project may be unique to the region in both its size and impact, the record clearly establishes that the Agreement itself is simply one to loan money in order to finance construction.

## V

Accordingly, we conclude that the court abused its discretion in granting Destiny Holdings a preliminary injunction, and we therefore would reverse the order, deny the motion seeking that relief and vacate the injunction.

HURLBUTT, J.P., and PERADOTTO, J., concur with PINE, J.; FA-HEY and GREEN, JJ., dissent in a separate opinion by FAHEY, J.

It is hereby ordered that the order so appealed from is modified, on the law, by vacating the first, second, third, fourth, eighth and tenth ordering paragraphs and by providing in the fifth, sixth and seventh ordering paragraphs that the preliminary injunction is granted upon condition that plaintiff post an undertaking in the amount of $15 million within 20 days after service of the order of this Court with notice of entry and as modified the order is affirmed, without costs.