■ CATHERINE B. WHITE et al., Respondents, v F.F. THOMPSON HEALTH SYSTEM, INC., et al., Appellants. [904 NYS2d 612]—

Appeal from an order of the Supreme Court, Ontario County (William F. Kocher, A.J.), entered October 23, 2009 in an action for, inter alia, a permanent injunction. The order granted the motion of plaintiffs for a preliminary injunction.

It is hereby ordered that the order so appealed from is reversed on the law without costs, the motion is denied, and the preliminary injunction is vacated.

Memorandum: Catherine B. White (plaintiff) is a resident of Ferris Hills at West Lake (Ferris Hills), an independent senior living facility owned and operated by defendants. Ferris Hills does not provide medical or health care services to its residents. The residents or their families may, however, hire their own aides to come to the facility to provide treatment and care. Pursuant to the Residency Agreement executed by plaintiff when she moved into her apartment at Ferris Hills, she is required to "comply with all reasonable procedures, policies and rules" set by defendants at that time or in the future. In response to complaints from residents and their families concerning inappropriate conduct by aides at the facility, defendants subsequently required all aides who enter Ferris Hills to sign a Caregiver Agreement (agreement), which sets forth rules and regulations for aides to follow while at the facility. Defendants also required the residents who employed the aides to sign the agreement. Plaintiff and her sons objected to the proposed agreement and, despite the fact that defendants made several accommodations for plaintiff and struck various provisions of the agreement at her sons' request, plaintiff refused to sign it. When defendants notified plaintiff that her aides would be prohibited from entering Ferris Hills if she and they did not sign the agreement as modified, plaintiffs commenced this action seeking, inter alia, injunctive relief. Plaintiffs also moved by order to show cause for a preliminary injunction enjoining defendants from prohibiting plaintiff's three aides from entering Ferris Hills. Supreme Court issued a preliminary injunction, and defendant appealed. We now reverse.

To prevail on a motion for a preliminary injunction, the moving party must establish, inter alia, that irreparable harm will result if provisional relief is not granted (*see Doe v Axelrod*, 73

NY2d 748 [1988]). The prospect of irreparable harm must be "imminent, not remote or speculative" (*Golden v Steam Heat*, 216 AD2d 440, 442 [1995]), and, here, plaintiff failed to make such a showing (*see generally GFI Sec., LLC v Tradition Asiel Sec., Inc.*, 61 AD3d 586 [2009]; *Copart of Conn., Inc. v Long Is. Auto Realty, LLC*, 42 AD3d 420, 421 [2007]). As the director of Ferris Hills made clear in an affidavit submitted in opposition to the order to show cause, defendants have no objection to the aides who currently provide services to plaintiff, provided that they sign the agreement and follow the rules set forth therein. Plaintiffs did not dispute that point. Additionally, there is no evidence that any of plaintiff's aides expressed opposition to signing the agreement. Thus, plaintiff would be harmed by enforcement of the agreement only in the event that her aides refused to sign the agreement or failed to comply with its rules, and there is no indication in the record that either scenario is likely to occur. In the absence of a showing that plaintiff faced the imminent prospect of irreparable harm in the absence of provisional relief, the court abused its discretion in issuing a preliminary injunction, and, accordingly, there is no need for us to determine whether plaintiffs demonstrated a likelihood of success on the merits or whether the equities weigh in their favor (*see generally Golden*, 216 AD2d at 442).

All concur except Smith, J.P., and Pine, J., who dissent and vote to affirm in the following memorandum.

Smith, J.P., and Pine, J. (dissenting). We respectfully dissent. It is well established that a party seeking a preliminary injunction "must establish, by clear and convincing evidence . . . , three separate elements: '(1) a likelihood of ultimate success on the merits; (2) the prospect of irreparable injury if the provisional relief is withheld; and (3) a balance of equities tipping in the moving party's favor' " (*Destiny USA Holdings, LLC v Citigroup Global Mkts. Realty Corp.*, 69 AD3d 212, 216 [2009], quoting *Doe v Axelrod*, 73 NY2d 748, 750 [1988]; *see J. A. Preston Corp. v Fabrication Enters.*, 68 NY2d 397, 406 [1986]). It is also well established that "[a] motion for a preliminary injunction is addressed to the sound discretion of the trial court[,] and the decision of the trial court on such a motion will not be disturbed on appeal, unless there is a showing of an abuse of discretion" (*Destiny USA Holdings, LLC*, 69 AD3d at 216 [internal quotation marks omitted]; *see Axelrod*, 73 NY2d at 750). We conclude that Supreme Court did not abuse its discretion in determining that plaintiffs established their entitlement to a preliminary injunction prohibiting defendants from restraining three caregivers employed by Catherine B.

White (plaintiff) from entering defendants' property at Ferris Hills at West Lake (Ferris Hills) solely to provide care to plaintiff.

Plaintiff entered into a Residency Agreement with defendant F.F.T. Senior Communities, Inc., doing business as Ferris Hills at West Lake (FFTSC), pursuant to which she would occupy a one-bedroom apartment in the independent living facility at Ferris Hills. Pursuant to the terms of that agreement, plaintiff agreed "[t]o comply with all reasonable procedures, policies and rules of Ferris Hills . . . including specifically those contained from time to time in any Resident Handbook, in each case as such procedures, policies and rules are now in effect or are hereafter amended or adopted." The Residency Agreement further provided, however, that "[n]o amendment of this Agreement shall be valid unless in writing executed by Ferris Hills . . . and [the r]esident."

After FFTSC began experiencing problems with caregivers who would solicit other residents at Ferris Hills and take advantage of residents financially, FFTSC sought to have all caregivers sign a Caregiver Agreement establishing a code of conduct for caregivers. Notably, residents were also required to sign the Caregiver Agreement. Plaintiff's sons, including plaintiff Scott C. Smith, opposed the proposed Caregiver Agreement because, inter alia, it afforded FFTSC the ability to terminate a caregiver "immediately" and solely at its discretion should it determine that the caregiver failed to comply with the Caregiver Agreement or otherwise engaged in "[i]mproper professional or personal conduct or unethical practices."*

When plaintiff's sons and defendants were unable to reach an agreement concerning the Caregiver Agreement, FFTSC informed Smith that, if FFTSC did not receive a signed Caregiver Agreement by a certain date, FFTSC would deny access to plaintiff's caregivers who had not signed a Caregiver Agreement. Plaintiffs commenced this action seeking, inter alia, a preliminary and permanent injunction, and they also moved by order to show cause for a preliminary injunction.

---

* We note that different versions of the proposed Caregiver Agreement appear in the record on appeal. The one submitted by plaintiffs in support of their motion for a preliminary injunction is the version that they were sent by FFTSC. That version does not afford the caregivers or the resident notice or an opportunity to be heard before FFTSC can deny access to the caregiver on the ground that the caregiver, inter alia, engaged in "[i]mproper professional or personal conduct or unethical practices." A version of the Caregiver Agreement submitted by defendants in opposition to plaintiffs' motion included such a provision. While that provision could refute plaintiffs' contentions concerning irreparable harm, we feel constrained to rely on the version of the Caregiver Agreement sent to plaintiffs and attached to their motion.

Contrary to defendants' contentions, plaintiffs have the requisite standing to bring this action (*see generally Caprer v Nussbaum*, 36 AD3d 176, 182 [2006]), and plaintiffs' assertions of potential injury are neither speculative nor conclusory (*cf. Matter of Bolton v Town of S. Bristol Planning Bd.*, 38 AD3d 1307 [2007]). We thus turn to the merits of plaintiffs' motion.

We conclude that the court did not abuse its discretion in determining that plaintiffs had established a likelihood of success on the merits. Although the Residency Agreement requires plaintiff to comply with "all *reasonable* procedures, policies and rules" that were then in effect or thereafter adopted, the question of what is reasonable is a question of fact (emphasis added). Furthermore, the Residency Agreement also provided that it could not be amended without a resident's written consent. Thus, the Residency Agreement is ambiguous concerning whether FFTSC could require a resident to sign a Caregiver Agreement giving FFTSC the sole discretion to terminate a resident's caregivers. "It is not disputed that the [Residency Agreement] was drafted by defendant[s] and any ambiguity therein should be resolved against [them]" (*Hodom v Stearns*, 32 AD2d 234, 236 [1969], *appeal dismissed* 25 NY2d 722 [1969]).

We likewise conclude that the court did not abuse its discretion in determining that plaintiffs had established the prospect of irreparable harm. Plaintiff is a 90-year-old woman who has used the same caregivers for approximately five years. Those caregivers provide highly personal hygienic care to plaintiff and have earned her trust over the years. To give FFTSC the ability to deny those caregivers access to plaintiff at *its* sole discretion creates a potential for immense irreparable harm. Such a loss cannot be adequately compensated for by money damages (*see Olean Med. Group LLP v Leckband*, 32 AD3d 1214 [2006]; *Klein, Wagner & Morris v Lawrence A. Klein, P.C.*, 186 AD2d 631, 633 [1992]). Furthermore, it is well settled that the loss of a trusted employee can constitute irreparable harm (*see generally Purchasing Assoc. v Weitz*, 13 NY2d 267, 274 [1963], *rearg denied* 14 NY2d 584 [1964]; *Urban Archaeology Ltd. v Dencorp Invs., Inc.*, 12 AD3d 96, 105 [2004]).

Finally, although we conclude that defendants' overall goal of protecting the vulnerable, elderly residents of Ferris Hills from rogue caregivers is laudable, we agree with the court that the potential immediate loss to plaintiff of her trusted caregivers is not outweighed by that goal. Although defendants have identified no concerns with respect to plaintiff's caregivers and, indeed, have conceded that they do not pose any threat to Ferris Hills residents, the proposed Caregiver Agreement nevertheless

gives FFTSC the power to deny those caregivers access to plaintiff at its sole discretion based on its determination that they engaged in unprofessional, improper or unethical conduct. Thus, recognizing that "[e]ntitlement to a preliminary injunction 'depends upon probabilities, any or all of which may be disproven when the action is tried on the merits'" (*Destiny USA Holdings, LLC*, 69 AD3d at 216, quoting *J. A. Preston Corp.*, 68 NY2d at 406), we conclude that the court did not abuse its discretion in determining that the balance of equities lies in plaintiffs' favor.

Because our review is limited to a determination whether the court abused its discretion in granting the preliminary injunction and we find no such abuse, we would affirm. Present—Smith, J.P., Carni, Lindley, Sconiers and Pine, JJ.