Delphi Hospitalist Servs. LLC v Patrick (2018 NY Slip Op 05100)





Delphi Hospitalist Servs. LLC v Patrick


2018 NY Slip Op 05100


Decided on July 6, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 6, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., PERADOTTO, LINDLEY, DEJOSEPH, AND CURRAN, JJ.


747 CA 18-00146

[*1]DELPHI HOSPITALIST SERVICES LLC, PLAINTIFF-APPELLANT,
v
EDWARD L. PATRICK, DEFENDANT-RESPONDENT. 






LIPPES MATHIAS WEXLER FRIEDMAN LLP, BUFFALO (JAMES P. BLENK OF COUNSEL), FOR PLAINTIFF-APPELLANT. 
BOND SCHOENECK & KING, PLLC, BUFFALO (BRADLEY A. HOPPE OF COUNSEL), FOR DEFENDANT-RESPONDENT. 


 Appeal from an order of the Supreme Court, Monroe County (Matthew A. Rosenbaum, J.), entered November 28, 2017. The order denied plaintiff's motion for a preliminary injunction. 
It is hereby ORDERED that the order so appealed from is affirmed without costs.
Memorandum: Plaintiff, a staffing agency that provides a range of emergency medical and hospitalist services to small community hospitals, commenced this action seeking to enforce a restrictive covenant in an employment agreement signed by defendant, a licensed physician assistant. Pursuant to the terms of the covenant, defendant was precluded from providing any medical services to any hospital at which he had provided services through his employment with plaintiff for a certain period of time after defendant's employment contract was terminated or plaintiff's contract with the particular hospital was terminated. From 2013 through 2017, defendant worked at Ira Davenport Hospital (Ira Davenport) in Bath, New York, which had contracted with plaintiff for the provision of medical and hospitalist services. After Ira Davenport terminated its contract with plaintiff and contracted with a competing medical staffing company, defendant terminated his contract with plaintiff and continued to work at Ira Davenport by accepting a position with plaintiff's competitor.
Plaintiff thereafter moved for a preliminary injunction enjoining defendant from providing services to Ira Davenport as well as any hospital in New York that had a contract for services with plaintiff at which defendant had provided medical services. Supreme Court denied the motion, and we now affirm.
It is well settled that " [p]reliminary injunctive relief is a drastic remedy [that] is not routinely granted' " (Sutherland Global Servs., Inc. v Stuewe, 73 AD3d 1473, 1474 [4th Dept 2010]). Moreover, "[i]n reviewing an order denying a motion for [a] preliminary injunction, we should not determine finally the merits of the action and should not interfere with the exercise of discretion by [the court] but should review only the determination of whether that discretion has been abused" (Esi-Data Connections v Proulx, 185 AD2d 705, 705 [4th Dept 1992] [internal quotation marks omitted]).
"In order to establish its entitlement to a preliminary injunction, the party seeking the injunction must establish, by clear and convincing evidence, . . . three separate elements: (1) a likelihood of ultimate success on the merits; (2) the prospect of irreparable injury if the provisional relief is withheld; and (3) a balance of equities tipping in the moving party's favor' " (Destiny USA Holdings, LLC v Citigroup Global Mkts. Realty Corp., 69 AD3d 212, 216 [4th Dept 2009], quoting Doe v Axelrod, 73 NY2d 748, 750 [1988]).
Here, contrary to plaintiff's contention, the court did not abuse its discretion in denying [*2]plaintiff's motion for a preliminary injunction inasmuch as plaintiff failed to establish, "through the tender of evidentiary proof" (Esi-Data Connections, 185 AD2d at 705), that "the harm to plaintiff from denial of the injunction as against the harm to defendant from granting it" tips in plaintiff's favor (Edgeworth Food Corp. v Stephenson, 53 AD2d 588, 588 [1st Dept 1976]). We note that defendant resides in Pennsylvania and that, while working at Ira Davenport over the past five years, his Pennsylvania license to be a physician assistant "had lapsed," precluding him from working in that state without obtaining a new license. According to defendant, it would take him "months to complete any credentialing process" to obtain a new license, during which time he would be out of work.
Although plaintiff offered to place defendant at two hospitals in New York State, one of them was 3½ to 4 hours from his home. The other hospital was closer to defendant's home, but defendant had worked there previously and asked for a transfer after only a month due to various conditions that made him "extremely uncomfortable."
Plaintiff, on the other hand, asserted in support of its motion for a preliminary injunction that defendant's violation of the restrictive covenant "pose[d] an immediate threat of irreparable harm to [plaintiff] in the form of the loss of its investment in its employees and the erosion of its business model." Plaintiff further asserted that defendant's violation of the restrictive covenant would set "a dangerous precedent" that would allow plaintiff's competitors "to take away more contracts from [plaintiff]—without the significant initial recruitment and other investments [that plaintiff] has had to incur." Plaintiff's argument in support of its motion, however, refers to the effect on its business model in the event that the court ultimately rules in defendant's favor concerning the enforceability of the restrictive covenant, not on the effect of allowing defendant to continue working at Ira Davenport during the pendency of the case. "[T]he harm to plaintiff from denial of the [preliminary] injunction as against the harm to defendant from granting it," i.e., defendant's unemployment during the pendency of the case, thus tips in defendant's favor (id.). Indeed, we can see no great harm to plaintiff in maintaining the status quo until the case is resolved.
Inasmuch as plaintiff failed to establish one of the three required elements for a preliminary injunction, we see no need to address the merits of the other two required elements.
All concur except Curran, J., who dissents and votes to reverse in accordance with the following memorandum: I respectfully dissent. In my view, plaintiff met its burden of establishing, by clear and convincing evidence, that the restrictive employment covenant is enforceable, plaintiff will suffer irreparable injury to its goodwill if provisional relief is not granted, and the equities tip strongly in plaintiff's favor. Therefore, I conclude that Supreme Court abused its discretion in denying plaintiff's motion for a preliminary injunction and would reverse the order.
As an initial matter, the majority and I appear to agree that plaintiff possesses a legitimate business interest deserving of consideration in the weighing of the equities between the parties. This conclusion is contrary to the court's determination that plaintiff's legitimate business interests are not impaired inasmuch as plaintiff lost its contract with Ira Davenport Hospital (Ira Davenport) and, thus, plaintiff does not have any such interest worthy of being weighed. To that extent, I submit that the majority and I agree that the court erred in that determination.
In balancing the equities between the parties, the majority reaches the conclusion that a preliminary injunction would alter the status quo and render defendant unemployed "during the pendency of this case." However, the majority overlooks a number of significant facts in the record. First and foremost, defendant has not said that he would be unemployed during the pendency of this case. He argues only that he will not be able to work at Ira Davenport, something he does not deny is in breach of his employment agreement with plaintiff. As the court noted, plaintiff limited its request "to restrain[ing] defendant from providing services to Ira Davenport only." Thus, defendant is at liberty to seek employment at any other hospital in New York State, many of which are undoubtedly closer to his Pennsylvania home. I further submit that we should not give any weight to the self-inflicted harm defendant asserts in the form of his declining two other positions offered by plaintiff, allowing his Pennsylvania license to lapse and apparently not seeking employment at any other New York hospital. In my view, the majority weighs too heavily the easier road chosen by defendant.
Second, the majority fails to appreciate the depth of the harm caused to plaintiff by our Court's refusal to enforce the restrictive covenant by the only effective means available, i.e., a preliminary injunction. It is significant that the remedy of an injunction was specifically stipulated in the employment agreement as the only remedy available to plaintiff inasmuch as defendant admitted in that agreement that his breach of the restrictive covenant would cause "substantial and irreparable injury" to plaintiff.
The "business model" references by the majority do not fully describe plaintiff's legitimate business interests. Plaintiff's entire business is built around establishing mutually-beneficial contractual arrangements with rural hospitals and nursing homes. Plaintiff's service allows the rural hospitals to save the time, effort and expense of finding competent medical professionals to practice at their facilities. Instead, these medical facilities pay to plaintiff a flat rate for its service of ensuring that professionals, such as defendant, are willing to practice at a rural facility, and are fully trained, licensed and insured. This is especially so for someone like defendant, who the record shows "was a highly skilled practitioner, who unlike the vast majority of his peers, could handle working alone in an emergency room department without the support of a doctor."
The essential reason I agree with plaintiff that the decision not to enforce the restrictive covenant through a preliminary injunction is "dangerous precedent" is that plaintiff has demonstrated that its business model is its most valuable asset and constitutes its "goodwill" deserving of protection.
Our courts have long recognized the value of goodwill in the business realm and its suitability for equitable relief. Recently, the Court of Appeals defined goodwill in the following terms: "Goodwill is an intangible asset of a business, corresponding in this context to what a buyer would pay for the business, over and above its value as a mere sum of tangible assets, because of the patronage and support of regular customers. Goodwill consists in every positive advantage[] that has been acquired by a proprietor in carrying on [a] business, whether connected with the premises in which the business is conducted, or with the name under which it is managed, or with any other matter carrying with it the benefit of the business . . . It is, in Judge Cardozo's words, what people will pay for any privilege that gives a reasonable expectancy of preference in the race of competition. Such expectancy may come from succession in place or name or otherwise to a business that has won the favor of its customers" (Congel v Malfitano, 31 NY3d 272, 292-293 [2018] [internal quotation marks omitted]).
This concept of goodwill is a creature of the English common law as described in the old English case of Cruttwel v Lye (17 Ves 335, 346, 34 Eng Rep 129, 134 [1810]). There, Lord Eldon wrote that "[t]he goodwill which has been the subject of sale is nothing more than the probability[] that the old customers will resort to the old place" (id.). Our Court has similarly written that goodwill "represents an elusive concept" but includes value accumulated "in consequence of the general public patronage and encouragement, which [the business] receives from constant or habitual customers" (Moore v Johnson, 108 AD3d 1125, 1126 [4th Dept 2013], lv dismissed 22 NY3d 950 [2013] [internal quotation marks omitted]).
In a situation similar to this one, the Third Department wrote that "an anticompetitive covenant may prevent the competitive use of client relationships that the employer assisted the employee in developing through the employee's performance of services in the course of employment" (Scott, Stackrow & Co., C.P.A.'s, P.C. v Skavina, 9 AD3d 805, 806 [3d Dept 2004], lv denied 3 NY3d 612 [2004]; see Ippolito v NEEMA Emergency Med. of N.Y., 127 AD2d 821, 822 [2d Dept 1987] [enforcing restrictive covenant in nearly identical situation]). Moreover, because "[l]ost goodwill and lost opportunity are damages which are difficult to quantify" (Gundermann & Gundermann Ins. v Brassill, 46 AD3d 615, 617 [2d Dept 2007]), the goodwill of a business is considered a valuable right to which equitable protection is extended (see Nobu Next Door v Fine Arts Hous., 3 AD3d 335, 335 [1st Dept 2004], affd 4 NY3d 839 [2005]).
Plaintiff's goodwill is manifested here in the relationship of trust plaintiff establishes with its client medical facilities to provide independent contractor relationships with competent, licensed and insured medical professionals willing to serve in a rural community. As the Court of Appeals explained in BDO Seidman v Hirshberg (93 NY2d 382 [1999]), "[t]he employer has a [*3]legitimate interest in preventing former employees from exploiting or appropriating the goodwill of a client or customer, which had been created and maintained at the employer's expense, to the employer's competitive detriment" (id. at 392). In failing to grant the injunction here, I submit that we allow plaintiff's valuable asset to be pirated away by another.
In the absence of equitable relief, I submit that, contrary to the majority's conclusion, the status quo is dramatically changed. Defendant is now at liberty to work for Ira Davenport, either as an agent of plaintiff's competitor or as a direct employee, without having to incur any of the time, effort or expense of having cultivated the relationship with the hospital, and Ira Davenport likewise has not had to incur the time, effort or expense of finding a highly-skilled professional like defendant to work in Bath, New York. The contract with Ira Davenport is not the legitimate business interest plaintiff seeks to protect, but rather, plaintiff seeks to protect its value as a turnkey operation providing highly-capable professionals at a quantified cost with little or no effort or time invested by the client hospitals. If the medical professionals under contract with plaintiff are now free to violate the restrictive covenants and go to work directly for the medical facilities where they presently serve, or contract with one of plaintiff's competitors as defendant did here, it is obvious that plaintiff's business model is no longer viable. For these reasons, I am unable to agree with the majority that the largely self-inflicted harm to defendant outweighs the likelihood that plaintiff's business model will not survive. Therefore, I conclude that plaintiff has established that a balancing of the equities favors granting the preliminary injunction.
Entered: July 6, 2018
Mark W. Bennett
Clerk of the Court