■ FOUR TIMES SQUARE ASSOCIATES, L.L.C., Appellant, and DURST 14 INVESTORS, L.L.C., et al., Intervenors-Appellants, v CIGNA INVESTMENTS, INC., et al., Respondents. [764 NYS2d 1] —Order, Supreme Court, New York County (Harold Tompkins, J.), entered June 20, 2002, which, insofar as appealed from, denied plaintiff Four Times Square Associates' motion for a preliminary injunction preventing defendants from holding it in default for failing to obtain terrorism insurance covering both foreign and domestic acts of terrorism and from invading the property's lockbox account to obtain funds to purchase such coverage, unanimously reversed, on the law and the facts, without costs, and the preliminary injunction granted on condition that plaintiff Four Times Square Associates post security, within 15 days of service of a copy of this order with notice of entry, by letters of credit in the aggregate amount of $5 million.

Plaintiff Four Times Square Associates, L.L.C. (Four Times Square) holds a ground lease for the subject property, the Conde Nast Building, which is encumbered by a $430 million nonrecourse mortgage. The mortgage note was placed in a trust whose beneficiaries are the investors who funded the loan and received debt instruments or certificates, which are rated and can be traded. Defendant LaSalle Bank National Association (LaSalle) is the trustee of the mortgage and, pursuant to a trust and servicing agreement, acts through defendants Cigna Investments, Inc. (Cigna), as special servicer, and BNY Asset Solutions L.L.C., as servicer. Four Times Square entered into a cash management agreement with the servicer and special servicer under which a lockbox account was established at the Bank of New York for the deposit of building revenues. In the event of a default under the mortgage, these lockbox funds

may be redirected to a cash management account and used, inter alia, to procure appropriate insurance coverage.

Although paragraphs 6 (a) (i) and (viii) of the subject mortgage require Four Times Square to maintain certain insurance coverage generally available from domestic insurance carriers at commercially reasonable premiums at its sole cost and expense, it does not expressly require terrorism insurance coverage. At the time the mortgage originated and the initial insurance policy was issued, acts of terrorism were not excluded from coverage under the "all risk" provisions of the policy. In the wake of the terrorist attacks of September 11, 2001, however, the proposed renewal policy explicitly excluded acts of terrorism from coverage. Subsequently, defendant Cigna, as special servicer, declared an event of default under the mortgage and instructed defendant Bank of New York to transfer the lockbox account funds into the cash management account and to procure separate terrorism insurance coverage. In the interim, Four Times Square purchased a $100 million terrorism insurance policy and obtained a $3.5 million letter of credit, which names Cigna as beneficiary, to secure the estimated premiums for such additional coverage.

Prior to the expiration of the original insurance policy, Four Times Square commenced this action seeking, inter alia, a preliminary injunction preventing defendants from taking any action in holding it in default under the mortgage and from invading the lockbox account. By order dated June 20, 2002, the motion court, inter alia, denied Four Times Square's motion for a preliminary injunction, finding that plaintiff would not suffer irreparable harm and could not establish a likelihood of success on the merits as a matter of law.

Contrary to the motion court's findings, we conclude that Four Times Square has met the requisite criteria for injunctive relief by demonstrating a likelihood of ultimate success on the merits, irreparable harm absent the granting of the preliminary injunction and a balancing of the equities in its favor (*see Grant Co. v Srogi*, 52 NY2d 496, 517 [1981]). It is well settled that a likelihood of success on the merits may be sufficiently established even where the facts are in dispute and the evidence is inconclusive (*see Ma v Lien*, 198 AD2d 186 [1993], *lv dismissed* 83 NY2d 847 [1994]; *Demartini v Chatham Green*, 169 AD2d 689 [1991]). Here, despite the existence of factual questions, including whether terrorism insurance coverage is "generally available" and its premiums are "commercially rea-

sonable" under the subject mortgage,* Four Times Square has set forth a prima facie case on the likelihood of success on the merits (see East 4th St. Garage v L.B. Mgt. Co., 172 AD2d 292 [1991]). Similarly, the threat to Four Times Square's good will and creditworthiness is sufficient to establish irreparable injury warranting the granting of injunctive relief (see generally Brintec Corp. v Akzo, N.V., 129 AD2d 447 [1987]). Finally, the equities demand that Four Times Square should not be forced to purchase terrorism insurance until there is a final determination on the contractual rights and obligations of the parties. In any event, defendants are protected by the $3.5 million letter of credit which secures them for their threatened $3.1 million expenditure for $300 million in additional terrorism insurance. In light of the estimate of defendant Bank of New York that $400 million in terrorism coverage for both foreign and domestic acts of terrorism was available at a premium between $4.5 to $5 million, the security should be increased, as hereinabove indicated.

Renewal and reargument granted and the decision and order of this Court entered on March 25, 2003 (see 303 AD2d 1057 [2003]) is hereby recalled and vacated. Concur—Nardelli, J.P., Tom, Lerner, Marlow and Gonzalez, JJ.

---

* We note that following the submission of this appeal, Congress enacted legislation designed to make available certain insurance against property and casualty loss arising out of foreign terrorist attacks, known as the Terrorism Risk Insurance Act of 2002 (TRIA). The Act extinguishes terrorism exclusions from existing policies and provides that an insurer must notify its insured of the increased premium for terrorism insurance on no less than 30 days' notice. If the insured does not agree to the proposed premium, the exclusion is reinstated. The insured, however, may purchase such insurance from any other insurer within the 30-day period.