Eastview Mall, LLC v Grace Holmes, Inc. (2020 NY Slip Op 02447)





Eastview Mall, LLC v Grace Holmes, Inc.


2020 NY Slip Op 02447


Decided on April 24, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 24, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, DEJOSEPH, CURRAN, AND WINSLOW, JJ.


855/19 CA 18-01634

[*1]EASTVIEW MALL, LLC, PLAINTIFF-RESPONDENT,
v
GRACE HOLMES, INC., DOING BUSINESS AS J. CREW, AND J. CREW GROUP, INC., DEFENDANTS-APPELLANTS. 






MORRISON COHEN LLP, NEW YORK CITY (DANIELLE C. LESSER OF COUNSEL), FOR DEFENDANTS-APPELLANTS. 
WEAVER MANCUSO FRAME PLLC, ROCHESTER (JOHN A. MANCUSO OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 


 Appeal from an order of the Supreme Court, Ontario County (Matthew A. Rosenbaum, J.), entered September 6, 2018. The order, inter alia, granted that part of the motion of plaintiff seeking a preliminary injunction. 
It is hereby ORDERED that the order so appealed from is reversed on the law without costs, the motion is denied and the preliminary injunction is vacated.
Memorandum: Defendants entered into a 10-year lease agreement with plaintiff, the owner and operator of a mall. The lease provides, inter alia, that if defendants' annual "gross sales"—a term specifically defined by the lease—were less than a certain threshold amount during the lease's fifth year, defendants could terminate the lease before its natural expiration date. Five years after the commencement of the lease, defendants informed plaintiff that their annual gross sales had failed to equal or exceed the threshold amount. Rather than terminating the lease at that time, the parties executed a lease modification agreement that reduced the amount of rent owed by defendants and extended the termination option for another year.
One year later, defendants again informed plaintiff that their annual gross sales did not equal or exceed the threshold amount and that they were thus exercising their option to terminate the lease. In response, plaintiff asserted that it had learned, via an auditor's reports, that defendants had wrongly excluded certain sales from their calculation of gross sales and were thus precluded from exercising the option to terminate the lease.
Plaintiff thereupon commenced this action seeking a declaratory judgment and asserting causes of action for, inter alia, breach of contract and anticipatory repudiation. Defendants appeal from an order that, among other things, granted that part of plaintiff's motion seeking a preliminary injunction enjoining defendants from ceasing business operations or otherwise taking steps to terminate the lease. We reverse.
"[T]o prevail on a motion for a preliminary injunction, the moving party has the burden of demonstrating, by clear and convincing evidence, (1) a likelihood of success on the merits, (2) irreparable injury in the absence of injunctive relief, and (3) a balance of the equities in its favor" (Eastman Kodak Co. v Carmosino, 77 AD3d 1434, 1435 [4th Dept 2010]; see generally Nobu Next Door, LLC v Fine Arts Hous., Inc., 4 NY3d 839, 840 [2005]). Whether a party is entitled to a preliminary injunction is a determination entrusted to the sound discretion of the motion court (see Doe v Axelrod, 73 NY2d 748, 750 [1988]; Destiny USA Holdings, LLC v Citigroup Global Mkts. Realty Corp., 69 AD3d 212, 216 [4th Dept 2009]). It is well settled that "[p]reliminary injunctive relief is a drastic remedy [that] is not routinely granted" (Delphi Hospitalist Servs. LLC v Patrick, 163 AD3d 1441, 1441 [4th Dept 2018] [internal quotation marks omitted]).
Even assuming, arguendo, that plaintiff demonstrated a likelihood of success on the [*2]merits, we conclude that plaintiff did not establish that it would sustain irreparable injury without a preliminary injunction (see Kolodziej v Martin, 249 AD2d 941, 942 [4th Dept 1998], lv dismissed 92 NY2d 919 [1998]) or that a balance of the equities favors plaintiff.
It is an anodyne proposition that "[i]rreparable injury, for purposes of equity, . . . mean[s] any injury for which money damages are insufficient" (Di Fabio v Omnipoint Communications, Inc., 66 AD3d 635, 636-637 [2d Dept 2009] [internal quotation marks omitted]). Thus, where "any loss of sales [caused] by the allegedly improper conduct of [the] defendant can be calculated," a plaintiff has an adequate remedy in the form of money damages and is not entitled to injunctive relief (Eastman Kodak Co., 77 AD3d at 1436; see Di Fabio, 66 AD3d at 637).
Here, the lease contains a liquidated damages provision that entitles plaintiff to certain money damages if defendants prematurely vacate the premises and cease operations. The lease also contains an integration clause stating that the lease is "the entire and only agreement between the parties." Thus, because the lease specifically provides that plaintiff is entitled to certain money damages in the event that defendants vacate the premises in breach of the agreement—the very injury that serves as the predicate for plaintiff's action—we conclude that plaintiff has an adequate remedy at law and, moreover, that plaintiff has not suffered irreparable harm because the liquidated damages clause was intended as the sole remedy for such a breach (cf. Karpinski v Ingrasci, 28 NY2d 45, 52-53 [1971]; Picotte Realty, Inc. v Gallery of Homes, Inc., 66 AD2d 978, 979 [3d Dept 1978]).
We disagree with our dissenting colleagues that plaintiff established a likelihood of irreparable injury from the loss of goodwill that would occur if defendants were to cease operations by prematurely terminating the lease. The "loss of goodwill and damage to customer relationships, unlike the loss of specific sales, is not easily quantified or remedied by money damages" (Marcone v APW, LLC v Servall Co., 85 AD3d 1693, 1697 [4th Dept 2011]) and may warrant a finding of irreparable injury in cases such as those involving unfair competition tort claims (see e.g. id.; FTI Consulting, Inc. v PricewaterhouseCoopers LLP, 8 AD3d 145, 146 [1st Dept 2004]), the proposed demolition or alteration of the premises (see e.g. Barbes Rest. Inc. v ASRR Suzer 218, LLC, 140 AD3d 430, 432 [1st Dept 2016]; Second on Second Café, Inc. v Hing Sing Trading, Inc., 66 AD3d 255, 272-273 [1st Dept 2009]), or the issuance of a Yellowstone injunction, in which it is a tenant, not the landlord, who seeks to enjoin the termination of a lease (see Waldbaum, Inc. v Fifth Ave. of Long Is. Realty Assoc., 85 NY2d 600, 607 [1995]; Zaid Theatre Corp. v Sona Realty Co., 18 AD3d 352, 355 [1st Dept 2005]). No such scenario is implicated here and, moreover, as already noted, the specific injury complained of by plaintiff was accounted for by the terms of the lease agreement.
We further conclude that the balance of the equities tips in favor of defendants. In considering this element when "ruling on a motion for a preliminary injunction, the courts must weigh the interests of the general public as well as the interests of the parties to the litigation" (Destiny USA Holdings, LLC, 69 AD3d at 223 [internal quotation marks omitted]). In balancing the equities, a court must inquire into whether "the irreparable injury to be sustained . . . is more burdensome [to the plaintiff] than the harm caused to defendant through imposition of the injunction" (Felix v Brand Serv. Group LLC, 101 AD3d 1724, 1726 [4th Dept 2012] [internal quotation marks omitted]). Here, we conclude that the harm defendants will suffer if forced to keep their 6,000-square-foot store open against their will is greater than the injury plaintiff will suffer from the loss of one tenant in the mall, especially because plaintiff may still recoup its loss via the liquidated damages provision.
In light of our determination, we do not address defendants' remaining contentions.
All concur except Smith and Winslow, JJ., who dissent and vote to affirm in the following memorandum: We respectfully dissent. It is well established that "[a] motion for a preliminary injunction is addressed to the sound discretion of the trial court[,] and the decision of the trial court on such a motion will not be disturbed on appeal, unless there is a showing of an abuse of discretion" (Destiny USA Holdings, LLC v Citigroup Global Mkts. Realty Corp., 69 AD3d 212, 216 [4th Dept 2009] [internal quotation marks omitted]; see Doe v Axelrod, 73 NY2d 748, 750 [1988]). It is also well settled that a moving party's entitlement to preliminary injunctive relief "depends upon probabilities, any or all of which may be disproven when the action is tried on the merits" (J.A. Preston Corp. v Fabrication Enters., 68 NY2d 397, 406 [*3][1986]). We conclude that Supreme Court did not abuse its discretion in determining that plaintiff established its entitlement to a preliminary injunction (see Destiny USA Holdings, LLC, 69 AD3d at 224-225; see also Tucker v Toia, 54 AD2d 322, 325-326 [4th Dept 1976]). We therefore would affirm the order.
Initially, we conclude that plaintiff met its burden of demonstrating, by clear and convincing evidence, a likelihood of success on the merits of its causes of action for declaratory judgment and breach of contract (see Nobu Next Door, LLC v Fine Arts Hous., Inc., 4 NY3d 839, 840 [2005]; Eastman Kodak Co. v Carmosino, 77 AD3d 1434, 1435 [4th Dept 2010]). On a motion for a preliminary injunction, a prima facie showing of the movant's right to relief is sufficient (see Gambar Enters. v Kelly Servs., 69 AD2d 297, 306 [4th Dept 1979]), and the actual proving of the case "should be left to the full hearing on the merits" (Tucker, 54 AD2d at 326).
The parties' 10-year lease for retail space contains an early termination option applicable if defendants' annual "gross sales," as defined in the lease, are less than a certain threshold amount during a specified measuring period. After plaintiff determined through its auditor that defendants had improperly excluded more than $900,000 in sales from their certified calculation of gross sales, plaintiff commenced this action and thereafter moved for a preliminary injunction enjoining defendants from taking steps to exercise their option to terminate the lease. The crux of the parties' dispute is whether promotional discounts are to be included in the calculation of gross sales. In defendants' view, gross sales means the amount actually received by defendants, and thus promotional and other discounts are not to be included in the calculation of gross sales. In plaintiff's view, however, defendants' interpretation of gross sales to mean "gross cash or credit actually received" conflates gross sales with net sales. Gross sales, in plaintiff's view, means the grand total of the sales transactions before the deduction of sales allowances, discounts, or returns. Thus, all amounts attributable to the total selling price of the merchandise are to be included in the initial calculation of gross sales, which is then adjusted by the amount of the exclusions and deductions specified in the lease.
The determination of the parties' dispute "rests solely on matters of contractual interpretation," and "[t]he interpretation of an unambiguous contractual provision is a function for the court" (Destiny USA Holdings, LLC, 69 AD3d at 218 [internal quotation marks omitted]). Here, the lease broadly defines gross sales to include "the total gross sales prices of any and all merchandise . . . in all cases whether said sales . . . are for cash or credit or otherwise, and without reserve or deduction for inability or failure to collect." That expansive definition is followed by a list of 17 specific exclusions and deductions, such as sums collected for taxes, returns, and refunds. The term "promotional discounts" is not mentioned in the broad definition of gross sales, nor is it listed among the itemized exclusions and deductions (see generally Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc., 63 NY2d 396, 403-404 [1984]). Thus, pursuant to the unambiguous language of the lease, promotional discounts must be included in the calculation of defendants' gross sales.
In support of its motion, plaintiff submitted evidence establishing that defendants failed to substantiate all of the exclusions and deductions from gross sales that they claimed, despite the requirement in the lease for them to do so. Plaintiff's experts opined that, when those unsubstantiated exclusions and deductions were added to the calculation of defendants' gross sales, defendants' actual gross sales for the measuring period exceeded the threshold amount and, thus, defendants were not entitled to exercise their option to terminate the lease prior to its natural expiration. We therefore conclude that plaintiff established a reasonable likelihood of success on the merits of its causes of action for breach of contract and declaratory judgment.
Plaintiff also demonstrated a likelihood of success on the merits of its cause of action for anticipatory repudiation by submitting evidence establishing that defendants had unequivocally expressed their intent not to perform the remainder of the lease (see Tenavision, Inc. v Neuman, 45 NY2d 145, 150 [1978]). " An anticipatory breach of contract by a promisor is a repudiation of [a] contractual duty before the time fixed in the contract for . . . performance has arrived' " (Princes Point LLC v Muss Dev. L.L.C., 30 NY3d 127, 133 [2017], quoting 10-54 Corbin on Contracts § 54.1 [2017]). "[W]hen a party repudiates contractual duties prior to the time designated for performance and before all of the consideration has been fulfilled, the repudiation entitles the nonrepudiating party to claim damages for total breach" (Norcon Power Partners v Niagara Mohawk Power Corp., 92 NY2d 458, 462-463 [1998] [internal quotation marks [*4]omitted]).
With respect to the second prong of the test for a preliminary injunction, we likewise conclude that the court did not abuse its discretion in determining that plaintiff established, by clear and convincing evidence, a danger of irreparable injury in the absence of injunctive relief (see generally Nobu Next Door, LLC, 4 NY3d at 840; Eastman Kodak Co., 77 AD3d at 1435). Assuming, arguendo, that defendants' gross sales during the measuring period did not fall below the threshold amount and thus that defendants are not entitled to exercise their option to terminate the lease, we agree with the majority that the liquidated damages provision in the lease entitles plaintiff to collect certain monetary damages if defendants breach the lease by prematurely vacating the premises and ceasing to conduct business operations. We disagree with the majority's determination, however, that the court abused its discretion in considering, for the purpose of determining whether provisional relief is warranted, if plaintiff will suffer irreparable injury not adequately remedied by monetary compensation if preliminary injunctive relief is not granted. We reject the view of the majority that the court erred in determining that defendants' breach would cause irreparable injury to plaintiff in the form of a loss of goodwill and damage to customer relationships under those circumstances.
Plaintiff submitted evidence establishing that defendants' store is a premier retailer in the mall and that their tenancy impacts the leases of other tenants of the mall. Defendants' store is included in an exclusive list of "Named Retail Tenants" defined in co-tenancy provisions of some leases, and other leases refer to defendants' store as a "Suitable or Successor Replacement Anchor Store," as a "Required Tenant," or as an "Upscale Tenant" for purposes of plaintiff maintaining business operations with those other tenants. Unless anchor stores or suitable or successor replacements for those anchor stores, such as defendants' store, continue to occupy a certain amount of leaseable space within the mall, other tenants are not required to continue to operate under their lease agreements. Thus, the potential injury to plaintiff is not limited to the loss of rental income from one of approximately 150 tenants in the mall, a loss that is easily quantified and remedied by monetary compensation pursuant to the lease. Here, the potential injury to plaintiff includes a domino effect involving other tenants in the mall. Stated simply, if defendants breach the lease by vacating the mall prior to the expiration of their lease term, plaintiff will be entitled to recover liquidated damages based on that breach. Plaintiff's other tenants in the mall whose co-tenancy provisions in their leases depend on defendants' continued occupancy in the mall throughout its lease term, however, will have the ability to terminate their leases based on defendants' premature departure, thereby causing irreparable harm to plaintiff. In our view, plaintiff sufficiently demonstrated that the premature termination of defendants' lease will cause a loss of goodwill and damage to plaintiff's customer relationships that will not be remedied by an award of liquidated damages and thus that temporary injunctive relief is appropriate.
Although we agree with the majority that the lease provides for certain monetary damages to plaintiff in the event of defendants' breach, we reject the implication by the majority that the lease's liquidated damages clause and integration clause somehow preclude plaintiff from seeking intervention by the court in order to prevent, or at least mitigate, their damages by attempting to enjoin defendants from breaching the lease. Nothing in the lease prevents plaintiff from seeking to hold defendants to the terms of the lease agreement or from protecting its own interests by attempting to prevent a breach.
Finally, we conclude that the court did not abuse its discretion in determining that plaintiff met its burden of establishing, by clear and convincing evidence, a balance of equities in its favor (see generally Nobu Next Door, LLC, 4 NY3d at 840; Eastman Kodak Co., 77 AD3d at 1435). Contrary to the determination of our colleagues that the injury to be sustained by plaintiff will be remedied by defendants' payment of liquidated damages and is limited to "the loss of one tenant in the mall," we conclude that "the irreparable injury to be sustained . . . is more burdensome [to the plaintiff] than the harm caused to defendant through imposition of the injunction" (Felix v Brand Serv. Group LLC, 101 AD3d 1724, 1726 [4th Dept 2012] [internal quotation marks omitted]).
As discussed above, the denial of a preliminary injunction will cause additional harm to plaintiff beyond the loss of defendants' store as a tenant in the mall. Although the injunction requires defendants to continue to operate under the terms of their existing lease and prohibits [*5]them from vacating the mall while the action is pending, defendants' employees keep their jobs and defendants' internal accounting records show that defendants continue to generate a profit from their sales in the mall. Thus, we conclude that the court did not abuse its discretion in determining that the equities tip in favor of plaintiff obtaining a preliminary injunction to maintain the status quo during the pendency of the action (see AJMRT, LLC v Kern, 154 AD3d 1288, 1290 [4th Dept 2017]).
Entered: April 24, 2020
Mark W. Bennett
Clerk of the Court