Matter of Transport Workers Union of Am. Local 106, Tr. Supervisors Org. v New York City Tr. Auth. (2024 NY Slip Op 51412(U))

[*1]

Matter of Transport Workers Union of Am. Local 106, Tr. Supervisors Org. v New York City Tr. Auth.

2024 NY Slip Op 51412(U)

Decided on October 16, 2024

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 16, 2024
Supreme Court, Kings County

In the Matter of the Application of Transport Workers Union of America Local 106, Transit Supervisors Organization, Petitioner,

against
New York City Transit Authority and MANHATTAN AND BRONX SURFACE TRANSIT OPERATING AUTHORITY, Respondents.

Index No. 526759/24

Colleran O'Hara & Mills, L.L.P., Woodbury (Thomas P. Keane of counsel), for petitioner.
Proskauer Rose LLP, New York City (Rosanna Facchini & Steven Banks of counsel), for respondents.

Aaron D. Maslow, J.

The following numbered papers were used on the petition:
NYSCEF Document Numbers 1-38.
Upon the foregoing papers, having heard oral argument, and due deliberation having been had, it is hereby ORDERED and ADJUDGED as follows:
BACKGROUND
Petitioner, Transport Workers Union of America Local 106, Transit Supervisors Organization (hereinafter Petitioner, TSO Local 106, or the Union), is the certified representative for NYCTA/MaBSTOA employees asserting grievances under New York's Taylor Law. Line Supervisors are employed by respondents New York City Transit Authority (NYCTA) and Manhattan and Bronx Surface Transit Operating Authority (MaBSTOA) (hereinafter Respondents or NYCTA/MaBSTOA). NYCTA and MaBSTOA are public employers as defined [*2]by Section 201(6) of the Taylor Law.
TSO Union 106 seeks judicial intervention from the Court in the form of a preliminary injunction to prevent what is describes as continued violations of the Collective Bargaining Agreement (CBA) and deprivations to members' bargained-for rights, noting public safety as a concern of equal importance. The dispute arises from what the Union claims is a new practice starting in April whereby NYCTA/MaBSTOA assigns Line Supervisors in the Zerega Avenue Central Maintenance Facility ("Zerega") located in the Bronx to two tricks per shift when there is a shortage of Line Supervisors, instead of resorting to a past practice of bringing in someone else, as discussed further below.

 UNION'S ALLEGATIONS
The Union represents NYCTA/MaBSTOA employees, including 27 Line Supervisors who work at the Zerega Facility. Zerega is a central maintenance facility whose sole responsibility is to repair and reconstruct buses under the supervision of a Line Supervisor. Buses may not be returned to public service until all repairs have been inspected and approved by a Line Supervisor and other management staff. A Line Supervisor's tasks range from routine maintenance work to supervising the repair and reconstruction of braking systems, electrical wiring throughout the bus, oil and fuel lines, and other highly safety-sensitive components of buses. Since Zerega's opening in 2001, Line Supervisors have only been assigned one "trick" per shift (disputed by NYCTA/MaBSTOA); a "trick" is defined and created solely by the employer and takes up the entirety of the Line Supervisor's shift.
When a scheduled trick is vacant because a Line Supervisor is absent, the longstanding past practice has been for the trick to be filled first using the "extra list" (disputed by NYCTA/MaBSTOA, who claims that other means were used too). The extra list consists of Line Supervisors who are on-call and available to cover vacant tricks at their regular straight-time rate of pay. The practice of using the extra list and then overtime to cover vacant tricks has historically ensured that no Line Supervisor has had to cover multiple tricks at once (disputed by NYCTA/MaBSTOA) and that repair and reconstruction work on buses is properly supervised. The longstanding past practice has been acknowledged in writing in a Commingling Agreement between NYCTA/MaBSTOA and TSO Local 106, which notes that "overtime is to be utilized" when "work is not covered through relief positions," i.e., the extra list (see NYSCEF Doc Nos. 3, 5) (disputed by NYCTA/MaBSTOA).

 PROCEDURAL HISTORY
Petitioner commenced this Article 75 proceeding via an order to show cause which requested a temporary restraining order (TRO) and a preliminary injunction against respondents. The Court denied petitioner's request for a TRO, so the only branch of relief to be considered in this motion sequence is whether the preliminary injunction shall be granted.
Prior to filing with the Court, petitioner sought relief within the CBA's grievance and arbitration procedures. A Step I Hearing was held for both grievances on May 14, 2024, and a Step II Hearing was held on May 30, 2024; both said grievances were denied. The matter was set for arbitration in August but was adjourned to October 23, 2024.
While the Union would prefer to handle all disputes under the CBA through arbitration, [*3]the Union believes that arbitral delays and concerns for public safety warrant judicial intervention via an injunction as there are violations to the CBA which in turn pose a threat to public safety, which the Union believes will cause irreparable and immediate injury to their members and the public at large.

 PRESENT DISPUTE:
The Union alleges that NYCTA/MaBSTOA have violated the CBA by establishing a moratorium on overtime pay as well as having Line Supervisors perform multiple "tricks" simultaneously without additional pay. Consequently, these violations deprive Line Supervisors of their bargained-for rights and the consequence of working multiple shifts at once presents a danger to the public who rely on these buses.
The alleged violations began in April of 2024 when NYCTA President Richard Davey circulated a memorandum to NYCTA and MTA executives which imposed a freeze on overtime pay. Subsequently, NYCTA/MaBSTOA management verbally informed Line Supervisors that overtime would no longer be used to cover vacant tricks. Local 106 was not informed of the policy change in writing nor was the policy provided to the Union in a written, formal announcement. Instead of filling vacant tricks through the extra list and compensating overtime, management began forcing Line Supervisors to cover vacant shifts while working their own shift with no additional pay. Starting in April 2024 through the present, multiple Line Supervisors have reported performing the duties of multiple Line Supervisors at once.
Petitioner has entered into the case record on NYSCEF two grievance letters, one from Supervisor Badillo (see NYSCEF Doc No. 7) and another from Supervisor Matkovic (see NYSCEF Doc No. 8). Badillo's letter states, in part, "Badillo was already scheduled to work trick 6 on April 22nd, 2024, but was also forced to cover the open/vacant resume position at the same time." Matkovic's letter uses similar language in his grievance letter. In addition to requesting a reversion to the past practice of filling vacant tricks first with the extra list and then with overtime, TSO Local 106 also specifically requested NYCTA/MaBSTOA immediately cease and desist from assigning multiple tricks to a single Line Supervisor during one shift.

 PETTIONER'S ARGUMENTS
CPLR 7502 (c) enables a court to entertain an application for a preliminary injunction in connection with a pending arbitration. The Court shall consider whether the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief.
Petitioner cites CPLR 6301, citing the grounds for entitlement to a TRO or a preliminary injunction, noting that the decision to grant or deny such relief is within the discretion of the Supreme Court (see Shake Shack Fulton St. Brooklyn, LLC v Allied Prop. Group, LLC, 177 AD3d 924 [2d Dept 2019]). Should a party be granted such relief, its purpose is to maintain the status quo, not to determine the ultimate rights of the parties (see CPLR art 63; Masjid Usman, Inc v Beech 140, LLC, 68 AD3d 942 [2d Dept 2009]).
The traditional standard for determining entitlement to injunctive relief requires the moving party to demonstrate (i) a likelihood of success on the merits; (ii) danger of irreparable harm in the absence of injunctive relief; and (iii) a balancing of the equities. (e.g. Aetna Ins. Co. v Capasso, 75 NY2d 860 [1990]).
To satisfy the first prong, TSO Local 106 argues that they've established, prima facie, that their claim would likely be successful on the merits due to respondents' violation of long-standing practices which are explicitly within the CBA and implicitly found in the contract due to past practices and industrial common law (see Matter of Manhattan & Bronx Surface Tr. Operating Auth. v Local 100, Transp. Workers Union of Am., 84 AD2d 749 [2d Dept 1981]). TSO Local 106 argues that a prima facie showing is sufficient, even when factual questions may exist (see Four Times Sq. Assoc, v Cigna Invs., 306 AD2d 4, [1st Dept 2003]). Paragraph 2 of Article XV of the CBA also permits an arbitrator to consider evidence of past practices when determining an award, when either party raises a contract grievance (see NYSCEF Doc No. 4). Moreover, since an arbitrator may look beyond the CBA's four corners, the Union argues that it is more than likely than not that they would be successful in arbitration. 
TSO Local 106 argues that the second prong is also satisfied as there is a substantial danger of irreparable harm, both to its members and to the public at large, if injunctive relief is not granted. The Union argues that its members are directly harmed by NYCTA/MaBSTOA's actions every time a Line Supervisor must work multiple tricks at once as it deprives the member of their bargained-for rights, violating long standing practice and the CBA. Additionally, available Line Supervisors are deprived of overtime pay when they cannot fill vacant tricks via the extra list; such deprivation of bargained-for rights cannot be undone. Further, mechanical failures, especially those leading to injury or accidents, may lead to discipline for Line Supervisors as they failed to properly supervise work performed on the buses, which may include termination for doing the work of multiple people at once. NYCTA/MaBSTOA are creating a dangerous situation wherein members of the public are at heightened risk of injury or death due to unsafe buses; such harm would be irreparable.
Finally, petitioner argues that a balancing of the equities for both parties weighs in favor of granting injunctive relief pending the outcome of the underlying arbitration. TSO Local 106 has demonstrated the harm that will continue to befall members if injunctive relief is not granted and NYCTA/MaBSTOA are allowed to continue the deprivation of bargained-for rights, thus violating the CBA. Additionally, the Court must consider the harm which would befall the public at large when balancing the equities; members of the general public are being placed at heightened risk of injury or death without any warning, notification, or ready way of knowing that repair and reconstruction efforts on public transit buses are less than fully safe.
NYCTA/MaBSTOA, on the other hand, would not be substantively prejudiced or harmed by the injunctive relief requested by the Union. There was long standing practice of filling vacant tricks with an available Supervisor from the extra list so continuing it would maintain the status quo without any detriment to respondents.
Lastly, TSO Local 106 asserts that an arbitration award would be ineffectual without a preliminary injunction because no arbitral award can undo or remediate the deprivation of bargained-for rights that occurs each time a Line Supervisor is assigned to perform multiple tricks simultaneously in violation of the CBA and established past practice. Likewise, in the event that an otherwise preventable accident, fire, or other incident occurs due to an unsafe bus, no arbitral award will be able to undo or remediate the resulting injuries or deaths. Absent restoration of the status quo, the public is at risk of irreparable harm which cannot effectively be addressed by any arbitral award after the harm has occurred.

RESPONDENTS' ARGUMENTS
NYCTA/MaBSTOA assert that the central question revolves around contract interpretation: whether the CBA's express language supersedes the industry's past practice to determine whether a contract had been breached. Here, the Union states that purported past practice has been "violated," if at all for more than five months. The reason the Union brought this dispute to the Court is due to "delays" in the arbitration process as well as "safety concerns" for the public while arbitration remains pending.
First, concerning "arbitral delays," it is undeniable that this proceeding has delayed arbitration because this action has unilaterally removed the grievances from the arbitration calendar. Secondly, the "public safety" claims are meritless as there are a series of protocols including multiple individuals at various responsibility levels who sign off on any given repair before a bus is put back in service. Moreover, these alleged concerns are pretext; the Union has never grieved that multiple tricks would constitute a public safety concern.
The Union has failed to make out entitlement to a preliminary injunction under any of its requirements, which necessitates a total dismissal of the petition as well as denial of petitioner's requested relief. Petitioner erroneously seeks a temporary preliminary injunction to maintain the status quo. However, mandatory injunctive relief requires zero issues of fact (see Shake Shack Fulton St. Brooklyn, LLC, 177 AD3d 924). Here there are issues of fact. Even if there were no issues of fact and respondents conceded to a breach, petitioner would still not be entitled to its sought relief (see Four Times Sq. Assoc, v Cigna Invs., 306 AD2d at 4).
Petitioner union does not allege facts establishing that if the underlying contract grievance is resolved in its favor, then any potential arbitration award would be ineffectual, as the arbitrator's decision in petitioner's favor could remedy the alleged harm currently existing. Respondent cites to Joseph v MTA Bridges & Tunnels (2012 NY Slip Op 32831[U] [Sup Ct, NY County 2012]), which held that a public employer need not be enjoined during arbitration procedures concerning violating a CBA, as a favorable arbitration award would have a "variety of effective remedies" available to them.
Second, the petition alleges that the Union and the public will suffer immediate and irreparable harm due to Line Supervisors performing multiple tricks at once. These wholly conclusory allegations are not sufficient to establish irreparable harm. In order to meet the standard for injunctive relief, "the irreparable harm must be shown by the moving party to be imminent, not remote or speculative" (Golden v Steam Heat, 216 AD2d 440, 442 [2d Dept 1995]). Loss of employment (see Matter of Armitage v Carey, 49 AD2d 496 [3d Dept 1975]) and reputational harm stemming from a deprivation of bargained-for rights do not establish irreparable harm (see Joseph, 2012 NY Slip Op 32831[U]).
Concerning the public, TSO Local 106 has no standing to raise a claim on behalf of "the public at large" (see Matter of Hill v Reynolds, 187 AD2d 299 [1st Dept 1992]). As set forth in the Seder Affidavit, the safety of Respondents' employees and bus riders as it relates to the maintenance and repair of buses is preserved by a series of protocols which ensure that supervisors at various levels of responsibility sign off on any repair before a bus is put in service. Petitioner's representation that that there is a direct link between Zerega Line Supervisors' work and passenger safety without recognition of all the other checks and fail-safes built into the process misrepresents the facts to create perceived safety concerns where none exist. The lack of any true safety concern is underscored by the fact that the Union did not raise any safety issue when initially bringing the Grievances and at the Step I/II hearings.
Third, respondents assert that petitioner cannot establish probability of success on the [*4]merits as there is a dispute as to whether there was a long-standing practice which respondents deviated from. There is a factual dispute as to whether a violation of the CBA occurred because NYCTA/MaBSTOA allege that they were within their rights to make staffing choices as they saw fit due to the CBA's express terms. Since facts are in dispute, petitioner did not make out prima facie entitlement to a preliminary injunction (see Shokin v Geller, 16 Misc 3d 1110[A], 2007 NY Slip Op 51371[U] [Sup Ct, NY County 2007]).
Even if there were no factual dispute as to whether one of the CBA's provisions were violated, petitioners need to establish more than the deviation from a past practice; they must show that that adherence to the past practice was contractually required. Petitioners cite to the Zipper Clause in the CBA to support this contention, but fail to note that an arbitrator may disregard this Clause when determining the award. Arbitral precedent cited in the Step II Decision upholds the principle that past practice may only be relevant where the CBA is otherwise silent. "However, it is well settled that a past practice, regardless of the frequency of its repetition, achieves the enforceability of an explicit contract provision, and thus becomes valid and binding, only in the absence of applicable contract language." (Matter of New York City Transit Auth. V Local 106, Transportation Supervisors Org., CI#2009-0018 (Queens Division Maintenance Fuel Station Nine-Hour Tour Assignment Grievance) [2010] [emphasis added] [NYSCEF Doc. No. 32 at 8].)
The Union has failed to distinguish this case from the case at bar and has failed to state why the CBA's express provisions which entitle respondents to exercise discretion to determine workloads and operate economically foreclose the enforceability of management prerogatives. The existence of clear contractual provisions which serve as respondents' absolute defenses and the fact that the parties have factual disputes demonstrate that the Union cannot establish a clear likelihood of success on the merits of this grievance. As this is a required showing to support injunctive relief, the request for injunctive relief must be denied.
Lastly, TSO Local 106 cannot establish that the balance of the equities is in its favor; as in this case, the only equitable interest the petitioner identifies is the avoidance of harm to its members and the public. Not only is NYCTA and MaBSTOA's equitable interest codified in statute as a responsibility for the benefit of the public, but the Court need only look to the CBA itself to see that petitioner has accepted this interest. Specifically, in the Management-Rights Clause (Article III), TSO Local 106 expressly accepted NYCTA/MaBSTOA's "basic" right to manage consistent with its statutory responsibility. Further, in the Grievance Procedure (Article VI), the Union agreed to limit an arbitrator's authority so that the arbitrator could not interfere. It is, therefore, beyond any real dispute that Respondents' and the public's interest in preserving Respondents' managerial prerogatives to effectively manage operations offsets the remote harm that may injure Union members. To enjoin Respondents from exercising their right to allocate and adjust resources, particularly where the Union had refused to expeditiously advance the grievances to arbitration, would be inequitable.

 ANALYSIS
It should be noted that "the merits of the grievance are not the court's concern. Even an apparent weakness of the claimed grievance is not a factor in the court's threshold determination. It is the arbitrator who weighs the merits of the claim" (Matter of Village of Maybrook v Teamsters Local 445, 222 AD3d 96, 99 [2d Dept 2023] [internal quotation marks and citation [*5]omitted]). Therefore, the Court will not discuss the sufficiency, or lack thereof, of Supervisor Badillo's and Matkovic's grievance letters.
Here, the only issue is whether the Union has established entitlement to a preliminary injunction pending the arbitrator's determination. While NYCTA/MaBSTOA broadly assert that petitioner is asking for a permanent injunction in this court/arbitration proceeding, the "status quo," as it stands currently, permits Line Supervisors to perform multiple tricks in one shift. A permanent injunction would require a change in status quo. The status quo can be altered only if petitioners make a clear showing of entitlement to the relief they seek.
As to whether TSO Local 106 prevails on its application here, a burden is imposed on it: it "must also demonstrate a probability of success on the merits, danger of irreparable injury in the absence of a preliminary injunction, and a balance of the equities in [its] favor" (Matter of Patrolmen's Benevolent Assn. of the City of NY, Inc v City of New York, 112 AD3d 116, 118 [1st Dept 2013]).
TSO Local 106 argues that an arbitration award would be ineffective absent a preliminary injunction as no award can remedy the consistent deprivation of bargained-for rights pertaining to overtime pay and lost wages stemming from an inability to be "on call" via the extra list. Petitioner asserts that no monetary award could remedy potential injuries or damages stemming from a bus prematurely being returned to operation. Additionally, the memorandum of law states, regarding the public safety piece, "Absent restoration of the status quo, the public is at risk of irreparable harm which cannot effectively be addressed by any arbitral award after the harm has occurred." The Court finds that TSO Local 106 failed to satisfy this prong as the Union has failed to state why an arbitration award would be ineffective without this relief. An arbitrator may reinstate backpay, titles, and job positions if the Union prevails. Additionally, petitioner has not proved any harm proximately resulting to the public as a result of any buses' less than optimal repairs, so there is no way to tell if an arbitrator's award in its would be effective or not in protecting the public; this goes to the element of likely success on the merits. (See Joseph, 2012 NY Slip Op 32831[U].)
Secondly, TSO Local 106 "must show that the irreparable harm is 'imminent, not remote or speculative' (Golden v Steam Heat, 216 AD2d 440, 442 [1995]). Moreover, '[e]conomic loss, which is compensable by money damages, does not constitute irreparable harm' (EdCia Corp. v McCormack, 44 AD3d at 994). The decision to grant or deny a preliminary injunction lies within the sound discretion of the Supreme Court (see Glorious Temple Church of God in Christ v Dean Holding Corp., 35 AD3d 806, 807 [2006])." (Family-Friendly Media, Inc. v Recorder Tel. Network, 74 AD3d 738,739 [2d Dept 2013].). Once again, any harm to the riding public, as presented by petitioner, is purely speculative, as such harm has not yet occurred.
TSO Local 106 would not be able to show a substantial likelihood to be successful on the merits. The CBA expressly states that, "The Operating Authority shall have the unquestioned right to exercise all normally accepted management prerogatives, including the right to fix operating and personnel schedules, impose layoffs, determine workloads . . . intended to carry out its managerial responsibility to operate the omnibus routes safely, efficiently, and economically." Here, the contract's terms are express, and moreover, historical practices do not entitle a moving party to a contractual right, absent substantial evidence (see Matter of Chenango Forks Cent. Sch. Dist. v New York State Pub. Empl. Relations Bd., 21 NY3d 255 [2013]). Petitioner's only evidence to support past practices consist of conclusory statements from the petition and the Valenti affidavit which states in part, "From Zerega's opening in . . . [*6]2001 until 2024, management had never once filled a vacant trick with a Line Supervisor who was already covering a different trick at the same time."
Finally, in weighing the equities, "a court must inquire into whether 'the irreparable injury to be sustained . . . is more burdensome [to the plaintiff] than the harm caused to defendant through imposition of the injunction' " (Eastview Mall LLC v Grace Holmes, Inc., 182 AD3d 1057, 1059 [4th Dept 2020]). Here, the balance favors respondents as petitioner failed to articulate an irreparable injury. Its members can be compensated retroactively by the arbitrator if he or she finds it its favor while the respondents will incur payments if the injunction is granted which not only are non-refundable but impact the budget constraints of a huge transportation system serving the riding public. The court agrees that petitioner can assert harm to the public inasmuch as its members are also members of the public, yet this Court has not been shown definitive, discrete, and distinct irreparable harm to the public.
In conclusion, the arguments of respondents are found to be more weighty than those of petitioner.

CONCLUSION
The within petition of petitioner Transport Workers Union of America Local 106, Transit Supervisors Organization seeking a pre-arbitration injunction against respondents New York City Transit Authority and Manhattan and Bronx Surface Transit Operating Authority is DENIED. This special proceeding is DISMISSED. Respondents shall have judgment against petitioner.
The foregoing constitutes the decision, order, and judgment of the Court.[FN1]

E N T E R
Justice of the Supreme Court of the State of New York

Footnotes

Footnote 1: Due to the urgency of the issue and the need to resolve it expeditiously, the Court has endeavored to provide the parties with a well-reasoned decision underpinning its determination. The Court apologizes for any typographical, citation, or other errors.